NATIONAL BANK OF NORTH AMERICA, Plaintiff,

v.

Donald R. QUEST and Henry R. Goldfarb, Defendants.

No. 75 C 491.

United States District Court, E. D. New York.

Jan. 17, 1977.

Cole & Dietz, New York City, for plaintiff, by Martin S. Berglas, New York City.

Friedman Shaftan & Salmore, New York City, for defendant Goldfarb, by Evan R. Salmore, New York City.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

*Background Facts*

Plaintiff, National Bank of North America ("the Bank"), brings this diversity action to recover on the personal guarantees of defendants Donald Quest and Henry R. Goldfarb for monies lent to Equitable Equities, Inc. ("Equitable"). At the time of the transactions in question, defendants were, respectively, President and Executive Vice-President and registered principals of Equitable, an investment banking organization doing business as a registered broker-dealer in over-the-counter securities.

The facts which are not in dispute are as follows. In April 1972 Equitable applied to plaintiff for a line of credit. The stated purpose of this application was to have the Bank "assist [Equitable] in clearing certain . . . security transactions." The Bank approved Equitable's application on or about April 28, 1972, when a general loan and collateral agreement was executed by the parties. By another agreement on the same date defendants Quest and Goldfarb personally guaranteed Equitable's debt to the Bank.

The terms of the agreement were that, pursuant to written instructions from Equitable, the Bank would handle securities and funds for Equitable's account, receiving or delivering specified securities, without or against payment. It was understood that at times it might be necessary for the Bank to advance sums of money so as to facilitate transactions, any such sums to accrue and be payable upon demand. Further, the loan and collateral agreement provided that the Bank could at any time, at its option, apply all or any proceeds to the payment of any of the obligations outstanding.

For several months the parties functioned under the agreement without complaint. However, in the fall of 1972 a situation arose which caused the Bank to demand payment of the outstanding debt. At that time plaintiff Bank had in its possession, among other collateral, open contracts to deliver 3,000 shares of Power Conversion, Inc. stock to a mutual fund. Following a period in which the price of the stock had sharply increased, Power Conversion, which had been trading at $40 per share, fell 35 points before trading was suspended by the

Securities and Exchange Commission. Consequently, the transaction with the mutual fund was never consummated.

On October 6, 1972, with an outstanding indebtedness of more than $150,000, the Bank, pursuant to the April 28 agreement, exercised its right to demand payment. Following Equitable's inability to meet this demand, the Bank sold all of Equitable's securities of which it had possession, retaining only the Power Conversion stock. The stocks were sold at their then current market value. The Bank now seeks from defendants $36,601.86, plus interest, representing the unsatisfied portion of the indebtedness.[1]

*Proceedings To Date*

Plaintiff initially brought this action against defendant Donald Quest solely. Following an answer which denied all of the allegations of the complaint on "information and belief", plaintiff moved for summary judgment. Defendant Quest subsequently filed an amended answer which interposed two defenses to the action. Consequently, the initial motion for summary judgment became moot. At this time defendant Quest joined Henry Goldfarb as a third-party defendant. Plaintiff then filed a complaint against defendant Goldfarb. The two actions were consolidated by stipulation of all the parties.

The defenses raised by both Quest and Goldfarb were that the loans were made to Equitable in violation of Regulation U, 12 CFR § 221, promulgated by the Board of Governors of the Federal Reserve System pursuant to § 7(a) of the Securities Exchange Act, 15 U.S.C. § 78g(a), and that the Bank did not exercise "good faith" in disposing of Equitable's securities when the Bank's demand for satisfaction of the debt was not met.

Plaintiff has now filed a second motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Defendant Goldfarb has filed an affidavit in opposition to this motion but none has been received from defendant Quest. Since, however, all previous papers of the two defendants have adopted the same position and a finding of liability would operate jointly and severally against each defendant, the failure of Quest to respond should not deter the court from considering the present motion.

As the allegation that the Bank did not exercise good faith in disposing of Equitable's securities does not reappear in defendant Goldfarb's affidavit in opposition to the present motion for summary judgment, this defense appears to have been dropped and the court need not consider it in depth. The court notes, however, that the Bank's actions appear to have been consonant with all standards of good faith and commercial reasonableness as required by the agreement itself and the Uniform Commercial Code which governed the transaction.

*Discussion*

Goldfarb's major contention in opposition to this motion for summary judgment is that the loans were extended in violation of Regulation U. That regulation governs "any credit secured directly or indirectly by any stock for the purpose of purchasing or carrying any margin stock in an amount exceeding the maximum loan value of the collateral, as prescribed from time to time . . . ." 12 CFR § 221.1(a). It is further provided that any contract made in violation of the regulation, or any contract the performance of which involves a violation thereof will be void. 15 U.S.C. § 78cc(b).

■ A private right of action for violation of Regulation U has been found to exist in the borrower. See, *e. g., Serzysko v. Chase Manhattan Bank*, 290 F.Supp. 74 (S.D.N.Y.1968), *aff'd mem.*, 409 F.2d 1360 (2 Cir.), *cert. denied*, 396 U.S. 904, 90 S.Ct. 218, 24 L.Ed.2d 180 (1969). Similarly, a guarantor is permitted affirmative relief under

---

1. The Bank retains in its possession the Power Conversion stock, which totals 9,000 shares as a result of a three-for-one stock split, at an "on paper" market value of $2,250. The Bank's claim for $36,601.86 represents Equitable's remaining liability less $2,250, the value of the Power Conversion stock.

Regulation U. If the principal obligation violated Regulation U, a guarantee of that obligation is void. *Stonehill v. Security National Bank,* 68 F.R.D. 24, 33 (S.D.N.Y. 1975). It is on these grounds that defendant Goldfarb seeks to avoid liability.

■ It is well settled that on a motion for summary judgment the court cannot try issues of fact, but must determine whether there are issues to be tried. *Cali v. Eastern Airlines, Inc.,* 442 F.2d 65, 71 (2 Cir. 1971); *American Manufacturers Mutual Ins. Co. v. American Broadcasting-Paramount Theatres,* 388 F.2d 272, 279 (2 Cir. 1967). The burden is on the moving party to demonstrate "the absence of any material factual issue genuinely in dispute." *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Home Ins. Co. v. Aetna Cas. & Surety Co.,* 528 F.2d 1388 (2 Cir. 1976); *Heyman v. Commerce and Ind. Ins. Co.,* 524 F.2d 1317, 1320 (2 Cir. 1975); *Lowell v. Twin Disc, Inc.,* 527 F.2d 767 (2 Cir. 1975); *National Life Ins. Co. v. Solomon,* 529 F.2d 59 (2 Cir. 1975). It is the view of this court that plaintiff has adequately met this burden and summary judgment is appropriate.

Plaintiff controverts Goldfarb's allegations of the invalidity of the loans and that factual issues are raised on two grounds. First, plaintiff states, the loans extended to Equitable were not for the "purpose" of purchasing securities on margin and hence did not come within the purview of Regulation U. Second, the loans are exempt from Regulation U under one of its exceptions.

Credit extended by a bank is not subject to Regulation U unless it meets three conditions. The credit must have been extended for the purpose of purchasing or carrying margin stock; the loan must have been secured directly or indirectly by stock, whether or not margin stock; and the amount of the loan must have exceeded the maximum loan value of the collateral. *Cooper v. Union Bank,* 354 F.Supp. 669, 675 (C.D.Cal.1973).

There is no dispute that the loans here in question were secured in part by stock. Plaintiff persuasively argues, however, that the other conditions have not been met. A consideration of the first condition suffices. Loans are characterized as either "purpose" or "non-purpose credit" under Regulation U. The former fall within the ambit of the Regulation while the latter do not. The interpretations aid one in determining what is to be considered purpose credit. 12 CFR § 221.101(a) states:

"Under this part the original purpose of a loan is controlling. In other words, if a loan originally is not for the purpose of purchasing or carrying registered stocks, changes in the collateral for the loan do not change its exempted character."

Furthermore, it is the "fundamental purpose of the loan which is to be considered controlling," 12 CFR § 221.110(b)(1)(i), and the purpose "cannot be altered by some temporary application of the proceeds." 12 CFR § 221.101(d).

■ The original and stated purpose for the loans here was to assist Equitable in clearing certain security transactions, *i. e.,* to act as a clearing house. Nowhere in the agreement is an intention to purchase securities on margin evidenced. Goldfarb now asserts that such loans were in fact used to purchase securities on margin and that the loans were made in violation of Regulation U. Yet Goldfarb offers no figures or details of transactions to support these allegations, merely stating that he "verily believes that the records and documents will indicate contrary to plaintiff's assertions that the loans were subject to Regulation U." However, "a party cannot raise an issue of fact simply by relying upon the complaint or an affidavit setting forth only a bald conclusion that is flatly denied." *Beckman v. Walter Kidde & Co.,* 316 F.Supp. 1321, 1325 (E.D.N.Y.1970), *aff'd,* 451 F.2d 593 (2 Cir. 1971), *cert. denied,* 408 U.S. 922, 92 S.Ct. 2488, 33 L.Ed.2d 333 (1972).

Plaintiff's second argument is that even if the loans are to be considered purpose credit the loans are exempt from Regulation U under one of the enunciated exceptions. 12 CFR § 221.2(f) expressly excepts

from the limitations imposed by Regulation U

"[a]ny credit extended to finance the purchase or sale of securities for prompt delivery which is to be repaid in the ordinary course of business upon completion of the transaction . . . ."[2]

Goldfarb does not appear to dispute that the credit was extended to finance the purchase or sale of securities for prompt delivery. He asserts, however, that there are material issues of fact raised as to whether the loans were to be repaid in the ordinary course of business. He states, "Plaintiff must have in its possession records indicating when the loans were repaid, how they were repaid and what securities were purchased by said extensions of credit." But this reasoning misconstrues the language of the exception, which does not turn on whether in fact the loans were repaid in the ordinary course of business but whether they were *to be* repaid in the ordinary course of business.

Regulation U does not define "ordinary course of business." However, in the definitions applicable to Regulation G, also promulgated by the Federal Reserve Board, "in the ordinary course of business" means "occurring or reasonably expected to occur from time to time in the course of any activity . . . ." 12 CFR § 207.2(b). The terms of the agreement provided that the Bank could at any time apply any or all of the proceeds from any of the collateral to the payment in whole or in part of any of the obligations. Plaintiff avers that any payments received upon delivery of securities in fact were applied to reduce the outstanding indebtedness of Equitable.

█ On the other side, Goldfarb tenders no evidence of extraordinary dealings between the parties. Rather, he again pleads lack of access to records and documents and states "that he verily believes that if a trial of the issues herein is permitted he can establish . . . ." This is not enough. The purpose of a summary judgment is to screen out sham issues and "to discover whether one side has no real support for its version of the facts." *Community of Roquefort v. William Faehndrich, Inc.*, 303 F.2d 494, 498 (2 Cir. 1962). It is to this end that Rule 56 requires that affidavits "set forth such facts as would be admissible in evidence" rather than the ambiguous and conclusory allegations contained in the pleadings. See *Dressler v. MV Sandpiper*, 331 F.2d 130 (2 Cir. 1964). Moreover, "summary judgment cannot be defeated by the vague hope that something will turn up at trial." *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2 Cir. 1969); *Radio City Music Hall Corp. v. United States*, 135 F.2d 715 (2 Cir. 1943). It is such a hope and little more that is offered by Goldfarb.

█ As defendant Goldfarb does not dispute that liability will flow from the personal guarantee executed by himself and defendant Quest should the underlying obligation be found valid and enforceable, judgment is directed in favor of plaintiff against the defendants jointly and severally in the amount of $36,601.86 with interest thereon.

Judgment shall be settled on five (5) days notice.

SO ORDERED.

---

2. Defendants do not contest that the following two provisos to this exception have been met:

"*Provided*, That the advance is not made to a person described in 221.3(q): *And provided further*, That it is either (1) extended to a broker or dealer, or (2) extended for a purpose other than to enable the borrower to pay for stock purchased in an account subject to Part 220 of this chapter (Regulation T)." 12 CFR § 221.2(f).