■ CHASE MANHATTAN BANK, N. A., Appellant, v MICHAEL KOMONS, Respondent.—Order, Supreme Court, New York County, entered May 28,

1979, denying plaintiff's motion for summary judgment (served in lieu of a complaint [CPLR 3213]) on a promissory note, unanimously reversed, on the law, with costs and disbursements, and the motion granted. In December, 1972, Provident Securities, Inc., a registered broker-dealer, was experiencing severe financial problems and was in desperate need of cash. It already owed plaintiff Chase Manhattan Bank, its principal banker, approximately $350,000. With collapse imminent Provident sought additional loans from Chase; however, Keating, the Chase officer with whom Provident's principal, Constantinou, dealt, could not approve any further loans, to either Provident or Constantinou. After some discussion Keating and Constantinou devised a scheme to make Chase funds available to Provident. Loans were to be made to Provident's customers, and the proceeds placed in these customers' brokerage accounts. The money would then be available for Provident's business. Because, however, any loans which ostensibly were extended to Provident's customers and the proceeds of which were to be deposited in these customers' brokerage accounts would be subject to margin regulations enacted pursuant to section 7 of the Securities Exchange Act of 1934 (US Code, tit 15, § 78g), applicable to "purpose credit", viz., credit for the purpose of purchasing or carrying securities, a purpose unrelated to the purchase of securities would have to be shown on the customers' loan applications. It is alleged that defendant, as well as four other customers of Provident, agreed to go along with the scheme only on Constantinou's assurance that Chase would look solely to stock pledged by Provident as collateral for collection of the note that defendant was to execute. Plaintiff concedes that the pledged stock was not registered on a national securities exchange or included in the Federal Reserve's list of over-the-counter margin stocks, as is required by regulation T if credit is extended for the purpose of purchasing or carrying securities. (12 CFR 220.3 [b], 220.7.) Defendant signed a 30-day note for $40,000 at 7½% interest and the loan was granted. The proceeds were deposited directly into defendant's account at Provident where they remained, never to be withdrawn. Two weeks later, liquidation proceedings were instituted in Federal court against Provident. Eventually, the loan proceeds were used by the Securities Investor Protection Corporation (SIPC) to repay Provident's customers. Citing section 7 of the Securities Exchange Act of 1934 (US Code, tit 15, § 78g), defendant contends that Chase may not recover on the note because the transaction involved an undisclosed extension of credit for the purpose of purchasing or carrying securities. We disagree. The loan, whether in its disguised form or in reality, was neither intended nor used for the purchase or carrying of securities. Rather, the proceeds were intended to aid a financially distressed brokerage house and to be used for its general business purposes. Neither regulation U (12 CFR 221.3), which governs bank loans made for the purpose of purchasing or carrying margin stocks, nor regulation X (12 CFR 224), which applies to all persons who obtain, receive or enjoy the beneficial use of credit for the purpose of purchasing or carrying securities has application to the controversy here. The proceeds of the loan were never intended or used for purpose credit. That the loan, the proceeds of which were to be deposited in defendant's brokerage account with Provident, would, without the false statement in the loan application, create the facade that it was for purpose credit does not make the loan a proscribed transaction. The argument that Chase aided in a violation of regulation T (12 CFR 220) by accepting nonmargin stock as collateral is of no moment. Regulation T, like regulations U and X, applies only to purpose credit. (12 CFR 220.4 [f] [8]; see, also, 12 CFR 220.119 [d].) Chase was free to make the loan with

whatever collateral it demanded, or even without any collateral at all. Similarly makeweight is the argument that Chase acknowledged the applicability of the margin rules by having defendant execute a "purpose statement" (Federal Reserve Board Form U-1), inasmuch as 12 CFR 221.3 (a) requires that a U-1 form be executed in connection with every extension of credit secured by stock, regardless of the purpose of the loan. The additional allegation that Chase's knowing acceptance of a false purpose statement from defendant renders the loan void is also unpersuasive. A bank is required to obtain such a purpose statement to protect itself in situations where the borrower misleads the bank as to the purpose of the loan, and thereafter seeks damages or rescission on the theory that the bank should have discovered the deceit. (*Serzysko v Chase Manhattan Bank,* 290 F Supp 74, 89, affd 400 F2d 1360, cert den 393 US 904.) The failure of a bank to have a U-1 form executed on a loan secured by stock is merely a technical violation of the margin rules and does not affect the validity of the underlying transaction. (*Daley v Capitol Bank & Trust Co.,* 506 F2d 1375, 1377-1378.) Thus, a bad faith acceptance by Chase of defendant's U-1 form would not, *ipso facto,* render the loan void, inasmuch as the loan was not purpose credit. Defendant is estopped from asserting the alleged oral agreement between Keating and Constantinou by which Chase would seek enforcement of the note only as against the shares of stock pledged as collateral. The note expressly provides that "notwithstanding that the Bank * * * may continue to hold Security and regardless of the value thereof, the undersigned shall be and remain liable for the payment in full, principal and interest, of any balance of the Liabilities and expenses at any time unpaid." It further provides that "No provision hereof shall be modified or limited except by a written instrument expressly referring hereto and to the provision so modified or limited." In this connection the Court of Appeals has ruled that "Public policy requires that a person who, for the accommodation of the bank executes an instrument which is in form a binding obligation, should be estopped from thereafter asserting that simultaneously the parties agreed that the instrument should not be enforced." (*Mount Vernon Trust Co. v Bergoff,* 272 NY 192, 196.) The stability of banks is a matter of such public concern that a party is precluded from asserting that an asset of a bank is less than what it appears to be on its face. (*Rothschild v Manufacturers Trust Co.,* 279 NY 355, 359; *Bay Parkway Nat. Bank of Brooklyn in N. Y. v Shalom,* 270 NY 172, 176; *Franklin Nat. Bank v Skeist,* 49 AD2d 215, 219.) In conclusion, under the circumstances present here, inasmuch as the loan for which the note was executed was not purpose credit, section 7 of the Securities Exchange Act of 1934 (US Code, tit 15, § 78g) is unavailable as a defense. Since this is the only issue raised, plaintiff is entitled to summary judgment. Concur—Sullivan, J. P., Bloom, Markewich, Silverman and Ross, JJ.