Nancy S. ERICKSON, Plaintiff,

v.

NEW YORK LAW SCHOOL, Defendant.

No. 82 Civ. 8625 (WCC).

United States District Court,
S.D. New York.

April 3, 1984.
As Amended April 25, 1984.

Harold M. Weiner, P.C., New York City, for plaintiff; Harold M. Weiner, New York City, of counsel.

Kramer, Levin, Nessen, Kamin & Frankel, New York City, for defendant; Harold P. Weinberger, Donald J. Olenick, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

Plaintiff Nancy S. Erickson ("Erickson"), who was formerly employed as a law professor by defendant New York Law School ("NYLS"), brought this action seeking injunctive relief and damages for alleged violations of the Equal Pay Act, 29 U.S.C. § 206(d), and breach of her employment contract. She charges in her complaint that NYLS intentionally discriminated against her by paying her less than it paid male professors who performed comparable work, and by denying her application for a tenured faculty position. Defendant has moved for summary judgment on the breach of contract claim[1] and has sought to have portions of the Equal Pay Act claim dismissed.[2] For the reasons set forth below, defendant's motions are granted in their entirety.

### I. Breach of Contract Claim

Erickson alleges that NYLS breached the employment contract in several respects. She contends, first, that NYLS denied her application for tenure on the basis of her sex, thereby failing to apply its own Principles of Rank and Tenure in a nondiscriminatory manner, pursuant to the policies of the Association of American Law Schools ("AALS"). Complaint at ¶ XIX.[3] Second, she charges that the NYLS Board of Trustees ("the Board") gave little or no consideration to the favorable tenure recommendation of the faculty Rank and Tenure Committee, and wrongfully considered "sexist, erroneous and uncredited oral information." Complaint at ¶ XX. Finally, plaintiff asserts that NYLS violated its contractual obligations by denying her tenure and a proper salary without "procedural and administrative due process." Defendant responds that Erickson's contract contains no provisions incorporating AALS policies, that the contract does not require the Board to follow recommendations of a tenure committee, and that NYLS violated no stated procedures in making her tenure decision or setting her salary.

Summary judgment is appropriate only where the Court is satisfied that there exists no genuine issue with respect to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, F.R.Civ.P.; *Friedman v. Meyers*, 482 F.2d 435, 438–39 (2d Cir.1973). Rule 56(e) provides for the submission of affidavits supporting and opposing summary judgment, made on personal knowledge and setting forth such facts as would be admissible in evidence. By considering these affidavits and other relevant materials, the Court can determine whether the non-moving party has any real support for its version of the facts. *National Bank of North America v. Quest*, 425 F.Supp. 186 (E.D.N.Y.1977). Rule 56(e) further provides that

---

1. Defendant's motion was originally denominated a motion to dismiss pursuant to F.R.Civ.P. 12(b)(6). However, both parties submitted matters outside the pleadings, and pursuant to F.R. Civ.P. 12(b), the Court determined that the motion should be treated as one for summary judgment. Accordingly, the parties were notified that they would be provided ten days to notify the Court if they wished to submit additional materials. No additional materials were forthcoming.

2. Defendant originally denominated this motion a Rule 12(f) motion to strike various claims and allegations as "redundant, immaterial, impertinent or scandalous." It argued in its memoranda, however, that the claims at issue should be dismissed under F.R.Civ.P. 12(b), and it is clear that plaintiff was in no way misled by the initial labelling error.

3. Plaintiff's complaint is Exhibit I to the Weinberger Affidavit.

[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is no genuine issue for trial.

Thus, when the moving party comes forward with supporting evidence, his opponent must "adduce factual material which raises a substantial question of the veracity or completeness of the movant's showing." *Beal v. Lindsay*, 468 F.2d 287, 291 (2d Cir.1972).

Based upon my review of the documents submitted by the parties in this action, I conclude that there is no genuine issue with respect to the following material facts: Nancy Erickson became an assistant professor at NYLS in the fall of 1975. She taught a variety of courses for three years, including sex-based discrimination, then took a leave of absence to pursue a graduate law degree. She returned to NYLS in the fall of 1979 and taught for one more year before leaving voluntarily to accept a position at another law school. Simon Aff. at ¶ 2.

Each academic year Erickson signed a "Full-Time Faculty Appointment Contract," appointing her to a faculty position for a period of one year. Ex. B to Simon Aff. The last contract expired on August 31, 1980. Each of the yearly contracts incorporated by reference the NYLS Principles of Rank and Tenure. The Principles of Rank and Tenure state that "[t]he Law School grants tenure to those faculty members who, in the judgment of the Dean and Board of Trustees, have proved their competency...." They go on to say that the decision whether to grant tenure "should ordinarily be made by specific act of the Board upon the recommendation of the Dean, which is in accord with the decision of the Tenure Committee of the Faculty." Ex. B. to Simon Aff. No mention is made of the Principles of Rank and Tenure of the AALS. There is a reference to principles and standards of the American Association of University Professors ("AAUP"), but this reference relates to the notice to be given a nontenured faculty member whose employment is terminated at the end of a contract period. Ex. B. to Simon Aff. The provisions of Erickson's contract and the NYLS Principles of Rank and Tenure set forth no particular procedure to be followed by NYLS in tenure selection or salary computation, nor do they address the issue of discrimination.

In the spring of 1978, after having taught for less than three years, Erickson asked to be considered for tenure. Faculty members were not usually considered for tenure until they had taught for four years, Simon Aff. at ¶ 6, but by a vote of 4–3, the Faculty Tenure Committee recommended Erickson for tenure. The Dean of the law school recommended that tenure be denied, however, and the Board unanimously adopted the Dean's recommendation. Simon Aff. at ¶¶ 6–7. Erickson was informed that her request was denied "without prejudice to reconsideration de novo" after her leave of absence and an additional year of teaching at NYLS. Ex. C to Simon Aff.

Despite the Board's instruction that Erickson reapply for tenure after an additional year of teaching, she asked to be reconsidered immediately upon her return from leave. She declined to resubmit her application to the Faculty Tenure Committee because she believed that the Board's previous failure to act in conformity with the committee's decision was improper. Ex. D to Simon Aff. By letter dated September 17, 1979, she also expressed concern regarding possible inaccuracies contained in certain documents considered by the Board during its original deliberations, and she requested copies of those documents. *Id.* The Board complied with Erickson's request. Ex. E to Simon Aff.

Erickson was advised in October 1979 that the Board would consider her application but would prefer to have available an up-to-date review by the Faculty Tenure Committee as well as opinions from independent experts in her field, in accordance

with recommendations of the AALS. Ex. E to Simon Aff. Erickson declined to follow the recommended procedure, and in December, was advised that the Board had once again denied her tenure. She filed a complaint with the Equal Employment Opportunities Commission ("EEOC") immediately, and shortly thereafter she accepted a position at Ohio State University Law School. Her contract with NYLS expired by its terms on August 31, 1980, having been neither renewed nor terminated. Erickson commenced the instant action on December 27, 1982.

■ I am convinced, based upon the uncontroverted facts set forth above, that NYLS is entitled to judgment on the breach of contract claim as a matter of law. Erickson has failed to specify any provisions in her contract or the NYLS Principles of Rank and Tenure that require the Board to grant her tenure upon the recommendation of the Faculty Tenure Committee. It is clear from the terms of the Principles of Rank and Tenure that the faculty committee has an important but merely advisory role in the tenure process. Moreover, plaintiff has not shown that her contract provided for any specific procedure to be employed by NYLS in granting tenure or setting salaries. Finally, she has not shown that the contract or the Principles of Rank and Tenure in any way prohibit discrimination on the basis of sex.

It would seem that plaintiff is asking the Court to construe her employment contract so as to imply an obligation on the part of NYLS to follow certain procedures in considering tenure applications or to refrain from discriminating against women. Under New York law, however,

> the rule is well settled that a court may not, under the guise of interpretation, make a new contract for the parties or change the words of a written contract.... [W]e concern ourselves with what the parties intended, but only to the

extent that they evidenced what they intended by what they wrote.

*Rodolitz v. Neptune Paper Products, Inc.,* 22 N.Y.2d 383, 386–87, 292 N.Y.S.2d 878, 881, 239 N.E.2d 628, 630, 631 (1968). This principle is particularly significant in the faculty appointment area of university governance, where the state and federal courts have recognized that public policy favors non-intervention by courts and administrative agencies. *See New York Institute of Technology v. Division of Human Rights,* 40 N.Y.2d 316, 322, 386 N.Y.S.2d 685, 688, 353 N.E.2d 598, 602, 603 (1976); *see also Faro v. New York University,* 502 F.2d 1229, 1231–32 (2d Cir.1974) ("Of all fields, which the Federal courts should hesitate to invade and take over, education and faculty appointments at a university level are probably the least suited for federal court supervision.").

This is not to suggest, of course, that discrimination of the sort alleged by plaintiff is not actionable. Had Erickson timely brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* or under the New York Human Rights Law, N.Y.Exec.Law § 297(9), she might have been entitled to relief. However, she failed to comply with the administrative exhaustion and timeliness requirements of these statutes, and the remedies provided therein were therefore unavailable to her.[4]

Because plaintiff has failed to identify any express provisions in her contract or in the incorporated Principles of Rank and Tenure that were even arguably breached by NYLS, and because there exists no basis for implying such provisions, summary judgment for defendant is appropriate on the contract claim. I turn my attention, then, to defendants' motion to dismiss portions of the Equal Pay Act claim.

*Claim for Injunctive Relief*

■ Plaintiff alleges violations of the Equal Pay Act as her first cause of action, and she seeks in her prayer for relief to

---

4. Under Title VII, a claimant must first file charges with the EEOC, and may bring a suit within ninety days of receiving a "no action" notice from the agency. 42 U.S.C. § 2000e–5(b),

(f)(1). An action filed under the New York Human Rights law requires no prior administrative filing, but carries a three-year statute of limitations.

enjoin NYLS and its agents from committing such violations. Complaint at pp. 5–6. Defendant has moved to dismiss the claim for injunctive relief on grounds that only the Equal Employment Opportunities Commission ("EEOC") has statutory authority to bring actions to restrain Equal Pay Act violations. I have reviewed the relevant statutory provisions and conclude that defendant is correct.[5]

Title 29 U.S.C. § 206(d) provides, in essence, that no employer subject to the Act's provisions may discriminate between employees on the basis of sex by paying lower wages to employees of one sex than it pays to employees of the opposite sex for equal work. Section 217 gives the district courts jurisdiction to entertain injunction proceedings under the Act, but § 211 states that, "except as provided in Section 212 of this title [relating to child labor], the Secretary of Labor shall bring all actions under Section 217 of this title to restrain violations of this chapter."

Prior to 1978, the Secretary's power under § 211 was exclusive. *See, e.g., Britton v. Grace Line, Inc.*, 214 F.Supp. 295, 296 (S.D.N.Y.1962). In 1978, however, enforcement power over Equal Pay Act violations was transferred from the Secretary to the EEOC, *see* Reorganization Plan No. 1 of 1978 § 1, 92 Stat. 3781, *codified at* 5 U.S.C. App. II, and thus the EEOC now holds exclusive power to seek injunctive relief under the Act. Accordingly, this Court has no jurisdiction to entertain Erickson's prayer for a permanent injunction, and that portion of the Equal Pay Act claim is dismissed.

*Statute of Limitations*

Erickson states in her complaint that because of her sex, she consistently "received remuneration and consideration for tenure at a lower level and in a more hostile work environment than male assistant and associate professors with like qualifications, ability and experience." Complaint at ¶ VII. These alleged violations, which she claims are willful and intentional, are said to have occurred "since on or about September 1975"[6] and to be continuing. Complaint at ¶ XV. Defendant asserts first that plaintiff's claim for back wages is subject to a three-year limitation period, and therefore cannot be asserted to recover any payments made prior to December 27, 1979. Defendant also argues that Erickson is not entitled to any payments for the period after her contract expired on August 31, 1980. Finally, defendant asserts that any Equal Pay Act claim based upon the denial of tenure is completely barred by the three-year statute of limitations. Erickson responds that the limitation period should equitably be tolled to permit her claim because the EEOC failed to advise her to file a civil action while awaiting its decision on whether it would act on her complaint, and thereby lulled her into inaction. Pl.Mem. at 3.

■ The limitation period for a willful violation of the Equal Pay Act has been correctly identified by defendant as three years. 29 U.S.C. § 255(a). Under the Act, a separate claim accrues each time the aggrieved employee receives a paycheck reflecting discriminatory wages. *See Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1050 (5th Cir.1973); *see also Soler v. G & U, Inc.*, 86 F.R.D. 524, 528 (S.D.N.Y.1980). Thus, absent equitable tolling, a plaintiff can only recover on those claims that accrued during the three years prior to suit. *Id.; Cacchione v. Erie Technological Products, Inc.*, 526 F.Supp. 272 (W.D.Pa. 1981). Erickson filed her complaint on December 27, 1982, and if there is no tolling

---

**5.** Defendant argues in its memorandum that an injunction was unobtainable by plaintiff under the Equal Pay Act. Inexplicably, plaintiff's response addresses the availability of injunctive relief on the breach of contract claim.

**6.** In her complaint, plaintiff refers to acts occurring as early as 1975. The relevance of these allegations is questionable because plaintiff was not hired until 1977. Plaintiff's counsel asserts in his affidavit that there is a valid ground for allowing her to pursue claims for the entire contract period. Although such an approach would be more defensible, in light of my conclusion that the statute of limitations bars all claims accruing before December 27, 1979, these earlier acts are irrelevant.

she is barred from pursuing any claim for a differential in pay that accrued prior to December 27, 1979. Erickson's claim for back wages is also limited to the period prior to the expiration of her last contract on August 31, 1980. She had no right to renewal of her contract and obviously she cannot recover damages based on discriminatory wages to which she never became entitled.

Defendant asserts only briefly that denial of Erickson's tenure application cannot form the basis of an Equal Pay Act violation, but goes on to argue that in any event, such a claim would be barred by the three-year limitation period. The Supreme Court held in *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), that a cause of action for denial of tenure accrues at the time the applicant is notified of the decision. Erickson was notified of the Board's action on December 6, 1979 but did not file her complaint until December 27, 1982. Thus, if there is no tolling of the three-year period, the tenure denial cannot serve as a ground for relief.

■ In the instant case, I find no justification whatsoever for tolling the three-year limitation period. Plaintiff's counsel argues in his memorandum of law that if the EEOC fails to advise a complainant to file a civil action while awaiting the outcome of an informal complaint to the agency, and thereby "lulls the complainant, as here, into thinking for two years it is going to find probable cause that a violation of the EPA has occurred, the plaintiff ... should not suffer." Pl.Mem. at 3. This suggestion is unpersuasive at best.

First, this argument is nothing more than the conclusory allegation of counsel. It is entirely without support in the form of an affidavit that plaintiff was, indeed, "lulled" by the EEOC, and it need not be given any effect by this Court. Second, Congress did not intend, in enacting the Equal Pay Act, that aggrieved individuals exhaust administrative remedies prior to instituting civil suits; thus, there was no requirement that Erickson ever file a complaint with the EEOC. In addition, Erickson was informed by the EEOC in April of 1982, if not earlier, that her right to recover back wages was not affected by the EEOC's decision and was subject to a statute of limitations. She was advised to contact an attorney immediately if she intended to file suit. Ex. B to Weiner Aff. Despite this warning, Erickson waited eight months to take action. These factors all militate against tolling of the limitation period. The factor most significant to my consideration, however, is plaintiff's status as an attorney and as the teacher of a course at NYLS on the law of sex-based discrimination. It is difficult to imagine that Erickson could have been unaware of her rights and obligations under the Equal Pay Act, but even assuming she was totally ignorant, she was undoubtedly well-equipped to make herself knowledgeable long before the running of the three-year limitation period. Under these circumstances, plaintiff's claims for back pay prior to December 27, 1979 and for any pay recoverable as the result of her tenure denial are time-barred.

Having disposed of plaintiff's cause of action for breach of contract and her claims for back pay before December 27, 1979 or after August 31, 1980, the Court is left with a cause of action under the Equal Pay Act for discriminatory wages paid during an eight-month period. The parties are directed to appear before the Court for a pre-trial conference on Friday, April 13, 1984, at 10:30 A.M., in Room 608. At that time, a discovery schedule will be arranged and the matter will be placed on the Court's trial calendar.

SO ORDERED.