■ Berliner Handels-und Frankfurter Bank, New York Branch, Respondent, v Vincent Coppola et al., Appellants.— Judgment, Supreme Court, New York County (Leland De-

Grasse, J.), entered January 30, 1990, in favor of plaintiff in the amount of $811,954.94 plus interest, unanimously reversed, on the law, and plaintiff's motion for summary judgment is denied, without costs.

In 1984, defendants Vincent and Helga Coppola visited several financial institutions in West Germany in an effort to obtain credit to expand their stock trading activities. Upon returning to New York, Mr. Coppola was solicited by an officer of BHF Securities Corporation, an affiliate of the Berliner Handels-und Frankfurter Bank ("BHF"), to open a loan account with that bank or its affiliates, and to obtain a line of credit for the purpose of purchasing securities. At a luncheon meeting attended by a New York lawyer for BHF, and Dieter Rampl, who identified himself as an officer of the Grand Cayman Islands branch of BHF ("BHF-Grand Cayman"), defendants were offered a $5,000,000 line of credit.

Confirmation of the line of credit was sent to defendants by letter dated August 16, 1985, and signed by Dieter Rampl and Rolf Droescher, respectively Senior Vice President and Vice President of BHF-Grand Cayman. By letter dated August 22, 1985, on the letterhead of the New York branch of BHF ("BHF-New York"), Rolf Droescher, then identified as Vice President of BHF-New York, requested that defendants sign a "Credit Facility Agreement", a purchase and pledge agreement relating to defendants' stock portfolio, and an application to open an account. Although the defendants did not execute the documents, BHF-Grand Cayman loaned $4,276,837 to the defendants to purchase securities as of September 16, 1985.

The record is unclear as to the value of the securities owned by defendants, which were intended to secure the loans, but the various figures presented indicate that their maximum loan value was far less than twice the amount of the loans. This is significant because Regulation U (12 CFR part 221), issued by the Board of Governors of the Federal Reserve System pursuant to section 7 of the Securities Exchange Act of 1934 (48 US Stat 881, 886; 15 USC § 78g) prohibits banks from extending credit for stock trading purposes ("purpose credit") beyond certain margin requirements. 12 CFR 221.3 (a) provides: "No bank shall extend any purpose credit, secured directly or indirectly by margin stock, in an amount that exceeds the maximum loan value of the collateral securing the credit." Section 221.8 (a) (Regulation U) provides that the maximum loan value of margin stock is "fifty per cent of its current market value."

In 1986, defendants fell behind in their interest payments on the loans, and BHF-Grand Cayman assigned its rights therein to BHF-New York, which sued defendants on the balance due. In settlement of that action, defendants signed a promissory note and a loan pledge agreement in favor of BHF-Grand Cayman in November of 1986. When defendants failed to make timely payments under the note, BHF-Grand Cayman again assigned its right to BHF-New York, which brought the underlying action to recover the principal balance of $811,954.94 plus accrued interest of $16,826.95.

Defendants asserted in their answer several affirmative defenses and counterclaims alleging, *inter alia,* that BHF and its New York and Grand Cayman branches violated Regulation U, which, it was urged, precluded recovery by the plaintiff BHF-New York. Plaintiff moved for summary judgment, and defendants cross-moved for the same relief. The Supreme Court granted plaintiff's motion for summary judgment, finding Regulation U inapplicable because the underlying loan was not made by a United States bank or a United States branch of a foreign Bank.

The first question presented on this appeal is whether there is a factual issue as to whether the loan in question was made by BHF-New York, or BHF-Grand Cayman. We hold that there is. The record is replete with documents and correspondence in regard to this matter on the letterheads of both the Grand Cayman and New York branches of BHF, in many instances signed by the same persons who held identical titles as officers of both branches. For instance, Dieter Rampl and Rolf Droescher, whose names appeared on several documents, held titles as Senior Vice President and Vice President respectively of BHF-Grand Cayman, and held the same titles with the New York branch. In addition, one Robert Suehnholz executed documents as Vice President of both branches.

The arrangement for the $5,000,000 line of credit issued by the Grand Cayman branch took place entirely in New York. The letterhead stationery of BHF-Grand Cayman bore the same New York City address and telephone number as that of BHF-New York, the only difference being the words "GRAND CAYMAN BRANCH" instead of "NEW YORK BRANCH." All payments on the 1985 loan were to be made "to BHF-BANK, New York Branch, favor BHF-BANK, Grand Cayman Branch."

The Supreme Court may have felt bound by the face of the November 1986 loan documents in concluding that the underlying loan was not made by a United States branch of a

foreign bank, i.e., BHF-New York, and that Regulation U was therefore inapplicable. But the 1986 loan documents, however denominated, did not constitute a new loan, but rather merely memorialized the balance then owing on the 1985 loan. Even if the 1986 loan documents were to be focused upon in determining whether there was a violation of Regulation U, the record is clear that at that point in time the loan balance on the note exceeded by a substantial amount 50% of the maximum loan value of the securities held by BHF. In any event, it has been recognized that an illegal transaction is often disguised to look like a legal transaction, "and thus the fact that the transaction is in form legal * * * will not prevent courts from examining the transaction to see whether the true nature of the transaction is not what its form indicates." *(Kuklis v Treister,* 83 AD2d 545, 546.) The court "must look through the form of the transaction to its sub- stance" *(Matter of Credit Bur. v State Tax Commn.,* 105 AD2d 1042, 1043). "The transaction must be judged by its real character, rather than by the form and color which the parties have seen fit to give it." *(Quackenbos v Sayer,* 62 NY 344, 346.)

We accordingly find that there is a factual issue which must be resolved at trial as to whether the loan was made by BHF- Grand Cayman, or whether by virtue of interlocking interests and interchanging of the bank officers who negotiated and administered the loan, it was in a juridical sense made by BHF-New York, using the BHF-Grand Cayman entity as a means of evading the margin requirements of Regulation U. The court may " 'pierce the corporat[e] veil and hold two corporations to constitute a single legal unit, where one is so related to, or organized, or controlled by, the other as to be its instrumentality or alter ego' " *(Matter of Total Health Care Indus. v Department of Social Servs.,* 144 AD2d 678, 679).

Even if it should be determined that BHF-Grand Cayman actually issued the loan, the loan still might be governed by Regulation U pursuant to 12 CFR 221.1 (b), which imposes credit restrictions on "banks" as defined in section 221.2 (b). Section 221.2 (b) (1) (iii) includes in the definition of a "bank": "Any agency or branch of a foreign bank located within the United States." There is no question that BHF-Grand Cayman is a branch of a foreign bank. It was not licensed by the State Superintendent of Banks to maintain a branch in New York, as was BHF-New York, but a factual question is presented as to whether it was nevertheless "located" in the United States by virtue of its negotiating the loan in New York, sharing

officers with BHF-New York, and using BHF-New York's office address and telephone for all purposes connected with its transaction with the defendants.

Even if plaintiff advanced sufficient proof that BHF-Grand Cayman was the lender, and that it was not subject to Regulation U because it was not "located" in the United States, a factual question is nevertheless presented as to whether BHF-New York violated 12 CFR 221.3 (a) (3), which provides: "No bank may *arrange for* the extension or maintenance of any purpose credit, except upon the same terms and conditions under which the bank itself may extend or maintain purpose credit under this part" (emphasis added).

In *Junger v Hertz, Neumark & Warner* (426 F2d 805, *cert denied* 400 US 880), the Second Circuit was concerned with the arrangement of credit pursuant to Regulation T, applicable to brokers, which provides that a broker cannot arrange for a third party to extend credit in a greater amount than the broker could extend to the customer directly. Quoting from a Securities and Exchange Commission decision *(Sutro Bros. & Co.,* 41 SEC 443, 456-457), the Second Circuit stated (426 F2d, *supra,* at 806-807): " '[It is] clear that when a broker permits himself to become the intermediary between customer and factor with respect to the customer's account or dealings with the factor, as by conveying the customer's communications or instructions to the factor or by responding to requests or directives of the factor concerning the customer's transactions, the broker becomes so involved in extension or maintenance of credit for the customer by the lender as to hold to be arranging.' "

Finally, a factual issue is presented as to the relative culpability of the BHF entities on one hand, and that of the defendants, assuming a finding by the trier of fact that the loan violated Regulations U or X. Regulation X (12 CFR part 224), which incorporates the provisions of Regulation U, makes it unlawful for a borrower to willfully obtain credit that violates section 7 of the Securities Exchange Act of 1934 or the rules and regulations thereunder (12 CFR 224.1).

In *Thomson McKinnon Sec. v Hornung* (69 AD2d 118), this court was reviewing a judgment in favor of the defendant customer wherein it was found, after trial, that the plaintiff broker had violated Regulation T, and the defendant customer had violated Regulation X. This court stated, in affirming the judgment for defendant (69 AD2d, *supra,* at 123): "Here, plaintiff and defendant have each violated the law. Each is experienced in the ways of speculation. The parties are, there-

fore, *in pari delicto* (Civil Liability for Margin Violations—The Effect of Sections 7 (f) and Regulation X, 43 Fordham L Rev 93, 99 *et seq.),* and neither is entitled to invoke the aid of the court." Whether the parties herein are equally at fault with respect to possible violations of the margin regulations applicable to each of them is another issue which must be resolved by the trier of fact in the circumstances presented herein. Concur—Carro, J. P., Ellerin, Wallach and Kupferman, JJ.