[603 NYS2d 300]

# Banque Indosuez, Respondent v Eftim Pandeff, Appellant.

First Department, November 4, 1993

APPEARANCES OF COUNSEL

*Mark A. Fowler* of counsel, New York City *(Joshua M. Rubins* with him on the brief; *Satterlee Stephens Burke & Burke,* attorneys), for appellant.

*Penny E. Fisher* of counsel, New York City *(H. Peter Haveles, Jr.,* and *Christopher F. Robertson* with her on the brief; *Cadwalader, Wickersham & Taft,* attorneys), for respondent.

**OPINION OF THE COURT**

SULLIVAN, J. P.

This is an appeal from the grant of a CPLR 3213 motion for summary judgment in lieu of complaint based on an unconditional, written guarantee and the subsequent judgment entered thereon in the sum of $2,028,769.29.

Plaintiff, Banque Indosuez, a French bank doing business in Switzerland, extended a series of loans in the form of a line of credit to Axa Capital Corporation (524,000 deutschmarks), Sophia Technologies, S.A. ($750,000) and Flexible Computer Corp. ($375,000), as to each of which defendant, Eftim Pandeff, a New York resident and principal therein, signed a letter agreeing to the terms of the line of credit. The Axa and Sophia loans were collateralized by pledges of Flexible stock. In consideration of the loan to Sophia and plaintiff's promise to forebear against Axa, by then in default on its loan, defendant, on December 17, 1987, executed a guarantee of Axa's indebtedness. Thereafter, on August 23, 1989, in exchange for plaintiff's forebearance with respect to all three loans, defendant executed a superseding joint guarantee unconditionally guaranteeing, to the extent of $1,592,894.50 with interest to June 30, 1989 and costs, payment of the Axa, Sophia and Flexible loans. By express provision, the guarantee was to be governed by Swiss law, plaintiff need not first sue the debtor in default before looking to the guarantor and the guarantor waived the benefit of any non-Swiss law which would act to prevent repayment.

By early 1990 Flexible had gone into bankruptcy and plaintiff decided to call in the loans, which were in default. When its demand for payment was ignored, plaintiff exercised its rights under the joint guarantee and demanded payment from defendant for $1,624,422. Defendant failed to respond and plaintiff commenced this action by service of a summons, notice of motion for summary judgment in lieu of complaint and supporting affidavits.

In the interim, on April 2, 1990, after notice of default to the debtors and prior to the demand for payment from defendant, plaintiff and Axa, represented by defendant, entered into a written agreement whereby plaintiff, as part of Flexible's liquidation in bankruptcy, consented to the private sale of Flexible's assets, the proceeds of which were to be held, pro rata, for the account of the secured creditors, including plaintiff, whose share would be 22.45%.

A minimum upset bid of $100,000 was set and the purchase

price was not to exceed $2,209,057, the aggregate amount of the secured claims. The agreement further provided that the assets would be repurchased by the largest secured creditor for the account of all the secured creditors and exchanged for 800,000 shares of the common stock of Flexible Multicomputer Corp. (Multicomputer), a Delaware corporation, to be issued pro rata to the aggregate amount of their claims. Defendant claims that the sale contemplated by the April 2, 1990 agreement was concluded on or about April 20, 1990 and the assets of Flexible transferred to Multicomputer in consideration of 800,000 shares of Multicomputer stock. According to defendant, plaintiff has received its pro rata portion of the Multicomputer shares.

Among the numerous defenses raised, only two are relevant to this appeal. In one, a partial defense, defendant contends that one of the three loans underlying the joint guarantee was fully satisfied by plaintiff's receipt of its pro rata allocation of the Multicomputer stock. The IAS Court rejected this claim, finding that no evidence had been presented to support such a defense. In his other defense, defendant contends that the loans underlying the joint guarantee were made in violation of the margin rules under the Securities Exchange Act of 1934 (Securities Exchange Act) and that any guarantee of such an obligation is void under section 29 (b) of the Act (15 USC § 78cc [b]). The latter defense also provided the basis for defendant's cross motion to dismiss the action on the ground of lack of subject matter jurisdiction. The court accepted defendant's argument that the Federal courts have exclusive jurisdiction over alleged margin rules violations, but instead of dismissing the action, dismissed only the defense based thereon. Since we find an issue of fact as to whether the Flexible loan has been satisfied, in whole or part, we modify to deny summary judgment as to that aspect of the guarantee, reduce the judgment accordingly and remand for further proceedings as to that issue.

A plaintiff suing on a guarantee establishes a prima facie case when he shows an obligation for the payment of money under the terms of the instrument and the failure to pay in accordance with such terms. *(See, e.g., European Am. Bank v Lofrese,* 182 AD2d 67, 71; *Woodhouse, Drake & Carey [Trading] v Royal Intl. Trade,* 188 AD2d 315, 316.) Once such a showing is made, the burden shifts to the defendant to demonstrate by admissible evidence the existence of a genuine issue of fact.

Among the defenses raised and pertinent to this appeal is the defense that plaintiff, in making the loans to Sophia and Axa, violated the Securities Exchange Act and the Federal Reserve Board Regulations promulgated thereunder, thus rendering the loan agreements void. In support of this defense, defendant has stated in an affidavit that the loans to Sophia and Axa were "for the purpose of purchasing or carrying margin securities within the meaning of [s]ection 7 of the Securities * * * Exchange Act of 1934, as amended, and the Regulations promulgated by the Federal Reserve Board [and] exceed[ed] the permissible margin." According to defendant, the defense was further supported by the explicit wording of the loan agreements, which confirm that Flexible stock was pledged as security for the loans and that the loan to Sophia was to be used to acquire 5,000,000 shares of Flexible stock.

■ At the outset, with respect to defendant's claim that the court lacked subject matter jurisdiction based on his margin rules violation defense, we note that the assertion of a Federal law defense cannot deprive a New York court of the power to adjudicate a complaint, which, as here, is based on common-law principles. As to the question whether the Federal courts have exclusive jurisdiction over a defense based on a Securities Exchange Act violation, an argument which the IAS Court accepted, 15 USC § 78aa vests the United States District Courts with "exclusive jurisdiction of violations of [the Securities Exchange Act and regulations promulgated thereunder], and of all suits in equity and actions at law brought to enforce any liability or duty" thereby created. Despite the clear grant to the Federal courts of exclusive jurisdiction over actions and counterclaims under the Securities Exchange Act, a split of authority exists as to whether a Securities Exchange Act violation defense is cognizable in a state court action. (See, 2 Hazen, Securities Regulation, at 223 [2d ed], citing cases; see also, Weiner v Shearson, Hammill & Co., 521 F2d 817, 822 [9th Cir 1975] [observing that State court apparently had jurisdiction]; Aetna State Bank v Altheimer, 430 F2d 750, 754 [7th Cir 1970] [State court jurisdiction]; Calvert Fire Ins. Co. v American Mut. Reins. Co., 600 F2d 1228 [7th Cir 1979] [explaining and reaffg Aetna]; Movielab, Inc. v Berkey Photo, 321 F Supp 806, 810, affd 452 F2d 662 [2d Cir 1971] [same]; contra, Alkoff

*v Gold,* 611 F Supp 63, 66 [SD NY 1985]; *Western Capital & Sec. v Knudsvig,* 768 P2d 989, 992 [Utah 1989].)\*

This Court, in *New York Stock Exch. v Goodbody & Co.* (42 AD2d 556 [1973]), without citing precedent or expressing a *ratio decidendi,* found Federal jurisdiction exclusive and dismissed the Securities Exchange Act defenses. In the same year, in *DeNunzio v Gaian* (43 AD2d 673), this Court, without further elaboration, followed *Goodbody & Co.* and dismissed Securities Exchange Act defenses. In both *Chase Manhattan Bank v Komons* (73 AD2d 556 [1979]) and *Berliner Handelsund Frankfurter Bank v Coppola* (172 AD2d 369 [1991]), however, this Court, without any reference to *Goodbody & Co.* and *DeNunzio* or the question of jurisdiction, reached the merits of Securities Exchange Act defenses. In *Jones v Gelles* (125 AD2d 794 [1986]), the Third Department made, in our view, the appropriate distinction. It dismissed a Securities Exchange Act counterclaim for lack of jurisdiction while entertaining a similarly based defense. *(Supra,* at 796.) On reconsideration of our own conflicting holdings, we conclude that the consideration of such a defense by a State court neither violates the Securities Exchange Act nor offends notions of Federalism. *(See, Aetna State Bank v Altheimer, supra,* 430 F2d 750; *Styner v England,* 40 Wash App 386, 699 P2d 234, 237 [1985].)

■ Turning to the merits of the defense, defendant, as a matter of law, may not plead a violation of Federal regulations governing margin requirements under the Securities Exchange Act to avoid liability under his guarantee. In accordance with the unanimous view of the Federal circuit courts that have considered the issue, defendant lacks the standing to assert such a claim since section 7 (15 USC § 78g) does not afford a private right of action for a violation of the margin rules. *(Bennett v United States Trust Co.,* 77O F2d 308, 311-313, [2d Cir 1985], *cert denied* 474 US 1058; *Bassler v Central Natl. Bank,* 715 F2d 308, 310-313 [7th Cir 1983]; *Walck v American Stock Exch.,* 687 F2d 778, 788-789 [3d Cir 1982], *cert denied* 461 US 942; *Gilman v Federal Deposit Ins. Corp.,* 660 F2d 688, 691-693 [6th Cir 1981]; *Stern v Merrill Lynch, Pierce,*

---

\* Both *Alkoff* and *Western Capital* misread *Levy v Lewis* (635 F2d 960, 967 [2d Cir 1980]) where the court, in stating that "only the federal courts can provide affirmative relief", was referring to jurisdiction to adjudicate a cause of action under the Securities Exchange Act. *Levy,* in turn, cited *Movielab, Inc. v Berkey Photo (supra),* which takes a position contrary to that taken in *Alkoff* and *Western Capital.*

*Fenner & Smith,* 603 F2d 1073, 1074-1093 [4th Cir 1979]; *Utah State Univ. of Agric. & Applied Science v Bear, Stearns & Co.,* 549 F2d 164, 169-170 [10th Cir 1977], *cert denied* 434 US 890.) In support of its conclusion that Congress did not intend to create a private cause of action under section 7, the underlying purpose of which is to the regulate the use of credit in securities transactions, the court in *Bennett v United States Trust Co.* (770 F2d, *supra,* at 312-313) noted that the amendment of section 7 to add subdivision (f) (Pub L 91-508, § 301 [a], 84 US Stat 1114, 1124 [1970]; 15 USC § 78g [f]) made manifest that the regulation was aimed at both lenders and investors. As the court observed, "While allowing a private cause of action could conceivably deter violations by lenders, it seems just as conceivable that it could encourage violations by investors seeking to shift the risk of loss". (770 F2d, *supra,* at 312-313.)

Since the interposition of an affirmative defense based on a section 7 violation would be the functional equivalent of asserting a cause of action thereunder, such a defense must be rejected. A party who does not have a private right of action under section 7 to seek affirmative relief may not assert a defense based on the same violation. *(See, Hinnant v American Natl. Bank & Trust Co.,* 406 So 2d 1206 [Fla App 1981].) *Stonehill v Security Natl. Bank* (68 FRD 24 [SD NY 1975]) and *National Bank v Quest* (425 F Supp 186 [ED NY 1977]), cited by defendant for the proposition that a guarantee of an underlying obligation which violates Federal regulations under section 7 governing maximum margin requirements is void under Securities Exchange Act § 29 (b), are no longer persuasive in light of the holding of *Bennett v United States Trust Co.* (770 F2d 308, *supra),* which reexamined and rejected that court's own prior holding in *Pearlstein v Scudder & German* (429 F2d 1136 [2d Cir 1970], *cert denied* 401 US 1013) recognizing a private right of action for a margin rules violation under section 7 of the Securities Exchange Act. Both *Stonehill* and *Quest* were decided when *Pearlstein (supra)* was the controlling view.

We recognize that in this Court's decision in *Berliner Handels-und Frankfurter Bank v Coppola* (172 AD2d 369, *supra),* an action on an unpaid loan, we reached the merits of the borrower's margin rule violation defense and held, *inter alia,* that an issue of fact existed as to the relative culpability of the parties with respect to the alleged margin violation *(supra,* at 373). To the extent that this ruling is contrary to the

unanimous Federal circuit court case law on the subject, we decline to follow our previous holding. Thus, the margin violation defense should be rejected not on the basis of any lack of jurisdiction, as the IAS Court held, but rather on the merits. Since section 7 affords no private remedy, defendant may not raise the defense.

■ Nor, contrary to the IAS Court's finding, do we believe that defendant's partial defense based on satisfaction of the Flexible loan should have been summarily rejected. It is, of course, axiomatic that "the payment or satisfaction of the principal obligation discharges the guarantor." *(Union Trust Co. v Willsea,* 275 NY 164, 166.) Defendant's submission on this point included an evidentiary showing that the purchase contemplated by the April 2, 1990 agreement, i.e., the repayment of the Flexible loan by the purchase of Flexible's assets from the bankruptcy liquidator, was concluded on or about April 20, 1990, that Flexible's assets were transferred to a new corporation, Multicomputer, in consideration of the issuance of 800,000 shares of Multicomputer common stock and that plaintiff received its pro rata share of such stock. The April 2, 1990 agreement provided that the purchase price from the private sale of Flexible's assets was to be set off, pro rata, against each secured creditor's claim against Flexible. Plaintiff did not deny these assertions nor challenge the validity of the April 2, 1990 agreement. Nor did it deny that the purchase contemplated by that agreement took place. Given such a record, summary judgment on that aspect of the guarantee should have been denied. Clearly, a triable issue of fact exists as to whether the Flexible loan was satisfied by plaintiff's receipt of its pro rata share of the Multicomputer stock.

Accordingly, the order of the Supreme Court, New York County (Beverly S. Cohen, J.), entered May 3, 1991, which, *inter alia,* granted plaintiff summary judgment in lieu of complaint, and the judgment thereon, entered March 24, 1993, in the sum of $2,028,769.29, should be modified, on the law, to deny summary judgment with respect to the underlying Flexible loan, to reduce the judgment accordingly and remand for further proceedings on that issue and, except as thus modified, affirmed, without costs or disbursements.

ELLERIN, KUPFERMAN and NARDELLI, JJ., concur.

Judgment and order, Supreme Court, New York County, entered on March 24, 1993 and May 3, 1991, respectively,

modified, on the law, to deny summary judgment with respect to the underlying Flexible loan, to reduce the judgment accordingly and remand for further proceedings on that issue and, except as thus modified, affirmed, without costs or disbursements.