■ BERLINER HANDELS-UND FRANKFURTER BANK, NEW YORK BRANCH, Respondent, v VINCENT COPPOLA et al., Appellants. [625 NYS2d 188] —Judgment, Supreme Court, New York County (Leland DeGrasse, J.), entered April 12, 1994, which awarded plaintiff $811,957.54 plus interest of $321,687.73, and order of the same court and Justice, entered on or about July 6, 1994, which, *inter alia,* denied defendants' motion to renew their opposition to plaintiff's motion for summary judgment, unanimously affirmed, without costs.

In 1985, a branch of the plaintiff bank extended credit to defendants up to $4,276,837.50 to allow defendants to expand their stock trading activities, without having defendants sign any documents memorializing the loan or pledging collateral to secure that loan. According to Regulation U of the Board of Governors of the Federal Reserve System (12 CFR part 221), issued pursuant to section 7 of the Securities Exchange Act of 1934 ([SEA] 48 US Stat 881, 886; 15 USC § 78g), a loan given for the purpose of trading stock (i.e., "purpose credit") must be secured with collateral having a market value of twice the amount of the credit (12 CFR 221.3 [a]). Within a year, the parties began to disagree over the terms of their arrangement, defendants stopped making interest payments, and plaintiff sued. That action was settled when defendants finally executed, in favor of the Grand Cayman branch of plaintiff's parent company, a promissory note for the balance then outstanding (about $1.4 million) and a loan and pledge agreement under which they granted a first security interest in the securities held in their BHF-Securities brokerage account and a secondary security interest in the securities held in brokerage accounts at Charles Schwab & Co.

Less than a year after execution of these documents, the stock market crashed, seriously damaging defendants' financial position. Their brokerage accounts with plaintiff and with Schwab were liquidated in an attempt to meet the resulting margin calls. Although defendants' accounts were "wiped out", a balance of about $800,000 remained on the loan with plaintiff and plaintiff commenced another action against defendants in New York State.

In March 1989, Justice DeGrasse granted plaintiff's motion for summary judgment. This Court later reversed (172 AD2d

369 *[Berliner I]),* finding the existence of several issues of fact, all arising under Regulation U.

Shortly before this case was to be tried, this Court decided *Banque Indosuez v Pandeff* (193 AD2d 265), expressly declining to follow the decision in *Berliner I* to the extent that that decision found issues of fact arising under a margin violation defense. In *Banque Indosuez,* this Court reconsidered various conflicting decisions *(see, New York Stock Exch. v Goodbody & Co.,* 42 AD2d 556; *DeNunzio v Gaian,* 43 AD2d 673 [Federal jurisdiction held to be exclusive and SEA-based defenses were dismissed]; *compare, Chase Manhattan Bank v Komons,* 73 AD2d 556; *Berliner I,* 172 AD2d 369, *supra* [merits of SEA-based defense addressed without reference to jurisdiction]) and held that consideration by a State court of a defense based on a violation of the Securities Exchange Act neither violates the SEA nor offends notions of Federalism. Such a defense must nonetheless be dismissed on the merits since, in accordance with the unanimous view of the Federal circuit courts, section 7 of the SEA does not afford a private right of action for a violation of the margin rules. And, "[s]ince the interposition of an affirmative defense based on a section 7 violation would be the functional equivalent of asserting a cause of action thereunder, such a defense must be rejected." (193 AD2d, *supra,* at 271.)

In direct response to *Banque Indosuez,* plaintiff again moved for summary judgment, which the IAS Court again granted. On the instant appeal, we reject defendants' contention that the IAS Court should only have dismissed their defenses based on Regulation U, and referred to trial their other defenses and counterclaims as well as plaintiff's claim. We find no merit to defendants' attempt to refashion their margin violation arguments as a defense sounding in breach of the loan agreement. Nor do we find that the instant situation warrants establishing an exception to the rule precluding a private right of action in this area *(see, Bennett v United States Trust Co.,* 770 F2d 308, 312-313, *cert denied* 474 US 1058).

To the extent that defendants' claims of improper liquidation by plaintiff and Charles Schwab & Co. are not barred by collateral estoppel, having already been the subject of an arbitration proceeding *(see, Safchik v Board of Educ.,* 158 AD2d 277), we find that defendants' claims in this regard are conclusory and unsubstantiated by the record. Nor do we perceive an improvident exercise of discretion in the court's denial of defendants' motion to renew. We have considered

plaintiff's other contentions and find them to be without merit. Concur—Ellerin, J. P., Rubin, Tom and Mazzarelli, JJ.