**Morton W. SENNETT, Plaintiff,**

v.

**OPPENHEIMER & CO., INC., Ronald L. Brownlow, and Daniel J. Piet, Defendants.**

**No. 78 C 1418.**

United States District Court, N. D. Illinois, E. D.

Oct. 15, 1980.

Michael B. Roche, Michael P. Mullen, Hubachek, Kelly, Rauch & Kirby, Chicago, Ill., for plaintiff.

George E. Weaver, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Morton W. Sennett ("Sennett") filed this action in April, 1978, yet nearly 30 months later he is still attempting to frame a complaint that contains a clear and concise statement of his cause of action in compliance with the Federal Rules of Civil Procedure. In January, 1979, Judge Bua dismissed the complaint without prejudice on the grounds that it commingled various legal theories in the same count, implicating few common facts and creating unnecessary confusion, and that the continuous incorporation by reference of all the facts in Count I throughout the remaining counts was excessively repetitive and confusing. *Sennett v. Oppenheimer & Co.*, No. 78 C 1418 (N.D. Ill. Jan. 11, 1979). By pleading each cause of action in a separate count, Sennett's first amended complaint filed in February, 1979, corrected the first problem Judge Bua noted. This Court, nevertheless, dismissed the first amended complaint because Sennett continued the confusing and repetitive practice of incorporating by reference each and every fact alleged in Count I throughout the other counts of the complaint.[1] *Sennett v. Oppenheimer & Co.*, No. 78 C 1418 (N.D.Ill., April 9, 1980).

On May 2, 1980, Sennett filed his second amended complaint containing seven counts. As in his previous complaints, Sennett alleges that the defendants, a commercial stock brokerage firm and two of its employees,[2] violated the anti-fraud provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934. Sennett claims that by means of certain misrepresentations, omissions to state necessary facts and untrue statements, defendants fraudulently induced him to open a discretionary account with Oppenheimer & Co. and then continued to act fraudulently in purchasing, selling, and managing the securities and other funds in his account, all in violation of sections 12(2) and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77*l*(2) and 77q(a), and sections 10(b), 11(d), and 15(c)(1) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78k(d), (f), 78o (c)(1). Sennett maintains that the opening of the discretionary account itself constituted the purchase and sale of a "security" within the meaning of the securities laws, 15 U.S.C. §§ 77b(1), 78c(a)(10), thereby invoking the anti-fraud provisions cited above. He also alleges that whether or not

1. In the earlier opinion, this Court also granted defendants' motion to sever and compel arbitration of Counts VI and VIII through XII of the first amended complaint. Arbitration was stayed pending resolution of the remaining claims before the Court. *Sennett v. Oppenheimer & Co.*, No. 78 C 1418, Mem. Op. at 2–7 (N.D.Ill., April 9, 1980).

2. Defendants Oppenheimer and Piet join in the motion to dismiss. Defendant Brownlow has not yet filed an appearance in this case, although the record indicates that he was served by certified mail on April 20, 1978.

this Court finds the discretionary account to be a "security," the defendants engaged in a continuing scheme or plan of misrepresentation and fraud in connection with the purchase or sale of securities beginning with the allegedly fraudulent inducement to open the discretionary account and continuing through the alleged fraud in trading the account.

Defendants have moved to dismiss the second amended complaint for failure to comply with the prior orders of Judge Bua and this Court and specifically Rules 8 and 9 of the Federal Rules of Civil Procedure. Defendants also move for dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules for failure to state a claim upon which relief may be granted. Except for the contention that the discretionary account itself constitutes a security within the meaning of the 1933 and 1934 Acts, a proposition addressed and rejected later in this opinion, this Court finds that Counts I through V adequately state causes of action under the securities laws at this stage of the proceedings. This Court further holds that Count VI, asserting a private right of action under section 11(d), 15 U.S.C. § 78k(d), is dismissed for lack of subject matter jurisdiction. Count VII, asserting a cause of action under the Illinois Securities Law of 1953, Ill.Rev.Stat., ch. 121½, § 137.1 *et seq.*, is also dismissed for the reasons set forth in this Court's prior opinion severing those allegations from the first amended complaint. *Sennett v. Oppenheimer & Co.*, No. 78 C 1418, Mem.Op. at 2–7 (N.D.Ill., April 9, 1980).

### Counts I Through V

Counts I through V allege facts that, if true, constitute a continuous scheme or plan by which the defendants intended to and did defraud Sennett.[3] Sennett charges that he was induced to open an account with defendants on the basis of their representations that, among other things, they used a

proven secret and unique method of generating profits through stock investments and trading in securities; that Sennett would earn a return of at least 20 percent on his investment; that they would preserve Sennett's principal investment; and that he would receive discounts on commissions charged to his account. Sennett further alleges that he relied on these representations and that defendants failed to disclose certain other material facts: that defendants traded in volatile and highly speculative securities without his consent and against his stated investment objectives; that they placed plaintiff in unsound options or short positions in certain securities; and that they committed other acts, many alleged to be fraudulent and intentional, that caused Sennett damages in excess of $100,000 between May and August of 1977. The defendants apparently do not contest the fact that if the allegations in the amended complaint were true, the alleged misrepresentations and assorted fraudulent acts would have occurred "in connection with the sale or purchase of securities" as that phrase has been interpreted by the Supreme Court. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Superintendent of Insurance v. Bankers Life and Casualty Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971).

On this third effort, Sennett has barely managed to arrange these allegations into a coherent complaint that complies with the Federal Rules of Civil Procedure. Although the paragraphs identifying the parties, venue, and the general factual overview of the plan of fraud and misrepresentation that Sennett alleges in this case are incorporated by reference throughout the seven counts of the complaint, Sennett has been somewhat more selective here than in his previous efforts by incorporating, for the most part, only those specific

---

**3.** For purposes of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), all well-pleaded facts in Sennett's amended complaint must be taken as true and if it appears that the plaintiff might establish any set of facts that would entitle him to relief, the complaint must not be dismissed. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101 02, 2 L.Ed.2d 80 (1957); *Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780, 783 (7th Cir. 1977).

elements necessary to each cause of action asserted in the separate counts. Furthermore, the complaint contains a sufficiently plain statement of the grounds upon which relief is sought and the averments of fraud are stated with sufficient particularity to satisfy Rules 8 and 9(b) of the Federal Rules of Civil Procedure. "Pleading is no longer a procedural game of skill at which counsel must be adept in order to insure the decision of his case on the merits." *Sundstrand Corp. v. Standard Kollsman Industries, Inc.*, 488 F.2d 807, 811 (7th Cir. 1973). Although this is Sennett's third draft of his complaint, it still must be construed, whenever possible, in his favor.

■ Count I asserts a cause of action for violation of section 10(b) of the Securities Exchange Act. It adequately alleges the parameters of such a violation through intentional and material misrepresentations, omissions, and untrue statements of fact upon which Sennett allegedly relied in connection with the defendants' purchases and sales of securities on his behalf. Count II asserts a separate cause of action for churning under both section 10(b) and section 15(c)(1) of the Exchange Act. Courts have held that the same allegations may establish a violation of both sections for churning and thus the incorporation of much of Count I into Count II is necessary to state a cause of action. *Landry v. Hemphill, Noyes & Co.*, 473 F.2d 365 (1st Cir.), *cert. denied*, 414 U.S. 1002, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973). Count III asserts a separate cause of action for violation of section 15(c)(1) and (2) of the Exchange Act which also necessarily includes a fair amount of incorporation of the allegations in Count I. To the extent possible, however, Sennett incorporated only those allegations that are relevant to the causes of action asserted in Counts II and III.

Count IV, which asserts a private right of action under section 17(a) of the Securities Act of 1933, necessarily incorporates and realleges many of the allegations contained in Count I since the United States Court of Appeals for the Seventh Circuit has held that the elements of a private cause of action under section 17(a) of the Securities

Act of 1933 are substantially the same as those necessary to make out a claim under section 10(b) and Rule 10b–5. *See Lincoln National Bank v. Herber*, 604 F.2d 1038, 1040 n.2 (7th Cir. 1979); *Daniel v. International Brotherhood of Teamsters*, 561 F.2d 1223, 1245–46 (7th Cir. 1977), *rev'd on other grounds*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979). *See also SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 867–68 (2d Cir. 1968) (Friendly, J. concurring), *cert. denied sub nom. Coates v. SEC*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969); *Felts v. National Account Systems Ass'n, Inc.*, 469 F.Supp. 54, 64 (N.D.Miss.1978).

Count V asserts a cause of action under section 12(2) of the Securities Act to which defendants take particular umbrage in their memorandum in support of their motion to dismiss because the complaint switches back and forth between the paragraphs freshly stated in Count V and those incorporated by reference to Count I. It is obvious, however, that Sennett has framed Count V of his complaint in such a way as to pare out those allegations in the section 10(b) claim asserted in Count I that are unnecessary to a claim under section 12(2). For example, Sennett has not incorporated or realleged those paragraphs of Count I that deal with scienter or reliance as these elements are irrelevant to a cause of action asserted under section 12(2). It was because of Sennett's failure to exercise this type of selective incorporation and attention to specifics that this Court dismissed Sennett's first amended complaint "in an effort to prod him into framing a more lucid complaint." *Sennett v. Oppenheimer & Co.*, No. 78 C 1418, Mem.Op. at 10 (N.D. Ill., April 9, 1980). Counts I through V of the second amended complaint, although clearly not a textbook example of cogent pleading because of the excessive use of incorporations by reference, nevertheless, now state causes of action which should permit defendants to frame responsive pleadings.

*Private Right of Action Under Section 11(d) of the Exchange Act*

Count VI of Sennett's second amended complaint asserts a cause of action under

section 11(d)(1) of the Securities Exchange Act of 1934, 15 U.S.C. § 78k(d)(1). Section 11(d) does not expressly provide for a private right of action and as far as this Court is able to determine, there are no reported cases on the question of whether a private right of action should be implied under section 11(d). In several recent decisions, however, the Supreme Court has articulated the standards to be used in determining whether a private right of action should be implied when the statute itself is silent on the question.

The starting point for any such inquiry, of course, is *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), in which the Supreme Court outlined the various factors relevant to determining whether a private right of action is implicit in a statutory scheme:

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted" ... that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit of implicit, either to create such a remedy or to deny one...? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff...? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78, 95 S.Ct. at 2088 (emphasis in original).

Although each of these elements may shed some light upon the propriety of inferring a private right of action, the Court has made it clear that each factor is not entitled to equal weight. In *Touche Ross & Co. v. Reddington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), the Court emphasized the controlling factor of Con-

gressional intent in determining whether to imply a private right of action under section 17(a) of the Securities Exchange Act of 1934.[4] In *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), the Court emphasized the importance of Congressional intent along with the general regulatory scheme itself in determining whether to imply a private right of action under the Investment Advisors Act of 1940. In *Transamerica*, the Court de-emphasized the inquiry into whether the plaintiff is a member of a class for whose especial benefit the statute was enacted. "The mere fact that the statute was designed to protect advisor's clients does not require the implication of a private cause of action for damages on their behalf." *Transamerica*, 441 U.S. at 24, 100 S.Ct. at 249. Thus, it seems that the two most relevant factors in determining whether to imply a private right of action are Congressional intent and the underlying purposes of the regulatory framework. The plaintiff's membership in a class that is a special beneficiary of the statute is a relevant but not a controlling factor. As this Court has remarked previously, "[t]his restrictive application of *Cort*—if, indeed, it can be called an application of that precedent—seems to reflect the growing disenchantment among a number of justices with the results obtained under the *Cort* analysis." *Stone v. Saxon & Windsor Group, Ltd.*, 485 F.Supp. 1212, 1218 (N.D.Ill.1980).

With these principles in mind, this Court will determine whether a private right of action should be implied under section 11(d). Section 11(d) makes it unlawful for a broker or dealer to extend credit to a customer with respect to a security which was a part of a new issue in a distribution in which the broker or dealer participated as a member of the selling syndicate within the past thir-

---

4. Indeed, the Court may have elevated congressional intent so far above the other *Cort* factors as to create a new test for implying a private right of action limited to this factor alone. The Court said, "the fact that a federal statute has been violated and some person harmed does

not automatically give rise to a private cause of action in favor of that person.... Instead, our task is limited solely to determining whether Congress intended to create the private right of action asserted...." *Touche Ross & Co. v. Reddington*, 442 U.S. at 568, 99 S.Ct. at 2485.

ty days.[5] The legislative history of the provision is completely lacking with regard as to whether Congress intended to provide a private right of action under section 11(d). While Congress deplored the unregulated use of margin and the over-extension of credit that contributed to the stock market crash of 1929, it did not indicate whether it intended to enforce the credit restrictions by means of private rights of action. The Supreme Court has noted that "implying a private right of action on the basis of Congressional silence is a hazardous enterprise, at best," *Touche Ross v. Reddington*, 442 U.S. at 571, 99 S.Ct. at 2486. Although this does not end the inquiry, the total lack of clear direction from Congress on this particular point would seem to militate against the implication of a private right of action in the case at bar.

■ Furthermore, the regulatory framework of the securities laws makes it unnecessary and even cumulative to other statutory remedies to imply a private right of action under section 11(d). Although Sennett, as a customer of the broker or dealer, is within the class of persons section 11(d) is intended to protect, the customer is not particularly harmed merely by the extension of credit in violation of section 11(d). Indeed, the customer initially benefits from the extension of credit in violation of the statute since he is thereby able to defer payment for a potentially valuable investment. The investor is not damaged unless the security decreases in value, a development that is wholly unrelated to the initial breach of section 11(d). The loss in value may be the result of natural market fluctuations, or it may be that the investor was induced to purchase a security he otherwise would not have purchased but for an overzealous broker's misrepresentations, fraud, or untrue statements made in connection with the sale of a security in which he had greater than average interest because of his involvement in the selling syndicate. An investor does not and should not have any recourse in the first situation, and he already has sufficient private remedies under the securities acts where he has been induced to make an unwise investment by fraud or misrepresentation. Moreover, the broker's failure to disclose his role in the selling syndicate to a potential customer might itself raise considerations of misrepresentation of a material fact or omission to state material facts "necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading" in violation of other sections of the securities acts, regardless of any unlawful extension of credit. *See, e.g.*, 15 U.S.C. § 77q(a), 78j(b); Rule 10b–5, 17 C.F.R. § 240.10b–5. *See also Jackson v. Bache & Co.*, 381 F.Supp. 71, 93 (N.D.Cal.1974). Finally, Congress has already provided for a private right of action for the *willful* violation of any of the provisions in the securities acts, presumably including the violation of section 11(d), in section 32 of the Securities Exchange Act of 1934, 15 U.S.C. § 78ff. This Court, therefore, finds that it is unnecessary and unwarranted to imply a private right of action under section 11(d) and add to the arsenal of remedies currently available to investors in securities. Accordingly, Count VI of the second amended complaint is dismissed for lack of subject matter jurisdiction upon the Court's own motion. Fed. R.Civ.P. 12(h)(3).

---

**5.** Section 11(d) provides in pertinent part:

(d) It shall be unlawful for a member of a national securities exchange who is both a dealer and a broker, or for any person who both as a broker and a dealer transacts a business in securities through the medium of *a member or otherwise, to effect through the* use of any facility of a national securities exchange or of the mails or of any means or instrumentality of interstate commerce, or otherwise in the case of a member, (1) any transaction in connection with which, directly or indirectly, he extends or maintains or arranges for the extension or maintenance of credit to or for a customer on any security (other than an exempted security) which was a part of a new issue in the distribution of which he participated as a member of a selling syndicate or group within thirty days prior to such transaction: *Provided*, That credit shall not be deemed extended by reason of a bona fide delayed delivery of any such security against full payment of the entire purchase price thereof upon such delivery within thirty-five days after such purchase . . . .

*The Discretionary Account as a Security*

In paragraph 19 of his second amended complaint, Sennett alleges that "[b]y inducing plaintiff to grant them discretionary authority over plaintiff's securities portfolio, defendants offered or sold to plaintiff a 'security' within the meaning of Section 2(1) of the Securities Act and Section 3(a)(10) of the Exchange Act." This paragraph is incorporated in Counts I and III through VII on Sennett's theory that the discrete transaction of opening a discretionary account with the defendants constituted a sale of a security, thereby invoking the anti-fraud provisions of the 1933 and 1934 Acts.

In *Milnarik v. M–S Commodities, Inc.*, 457 F.2d 274 (7th Cir. 1972), Justice (then Judge) Stevens wrote an oft-cited and a well-reasoned opinion for the court holding that a discretionary trading account was not a security and that merely opening such an account did not entitle the investor to the protections afforded by the federal securities laws. Although *Milnarik* involved trading in commodities, the reasoning in the case is equally applicable with regard to a discretionary account involving trading in securities. Justice Stevens applied the three-part test articulated by the Supreme Court in *Securities Exchange Commission v. W. J. Howey Co.*, 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1945) and concluded that "an investor who grants discretionary authority to his broker [does not] thereby [join] the broker's other customers in the kind of common enterprise that would convert the agency relationship into a statutory security." *Milnarik v. M–S Commodities, Inc.*, 457 F.2d 274, 279 (7th Cir. 1972). The Seventh Circuit recently reaffirmed the reasoning in *Milnarik* requiring horizontal commonality among investors pursuant to the *Howey* test. *See Hirk v. Agri-Research Council, Inc.*, 561 F.2d 96 (7th Cir. 1977). *See also Wasnowic v. Chicago Board of Trade*, 352 F.Supp. 1066 (M.D.Pa.1972) *aff'd without opinion*, 491 F.2d 752 (3d Cir.), *cert. denied*, 416 U.S. 994, 94 S.Ct. 2407, 40 L.Ed.2d 773 (1974). In *Hirk*, the court expressly rejected the approach taken by other courts that held that a discretionary account constitutes a security on the basis of a theory of vertical commonality between the investor and his broker. *See, e.g., Securities Exchange Commission v. Glen W. Turner Enterprises, Inc.*, 474 F.2d 476 (9th Cir. 1973); *Securities Exchange Commission v. Continental Commodities Corp.*, 497 F.2d 516 (5th Cir. 1974). *See also Alvord v. Shearson Hayden Stone, Inc.*, 485 F.Supp. 848 (D.Conn.1980).

This Court finds that *Hirk* and *Milnarik* represent the better reasoned approach in this area. Accordingly, this Court will strike paragraph 19 of Sennett's second amended complaint. To the extent that the complaint attempts to state a cause of action premised upon the status of the discretionary account as a "security," this Court holds that it fails to state a cause of action upon which relief can be granted. This ruling, of course, has no effect on the causes of action relating to the actual trading of securities in Sennett's account.

In summary, defendants' motion to dismiss Sennett's second amended complaint for failure to comply with the earlier orders of Judge Bua and of this Court is denied. Defendants' alternative motion to dismiss the complaint for failure to state a cause of action upon which relief may be granted is allowed only with reference to Sennett's characterization, in paragraph 19 of the second amended complaint, of the discretionary account transaction as constituting the purchase or sale of a security. The remainder of Counts I through V adequately state causes of action under the securities laws. Counts VI and VII are dismissed for the reasons set forth earlier in this opinion at page 941. It is so ordered.