KOPPERS COMPANY, INC., Plaintiff,

v.

AMERICAN EXPRESS COMPANY, a corporation, Shearson Lehman Brothers Holdings, Inc., a corporation, Shearson Lehman Hutton, Inc., a corporation, SL–Merger, Inc., a corporation, BNS Partners, partnership, BNS Inc., a corporation, Bright Aggregates Inc., a corporation, Beazer PLC, a public limited company, and National Westminister Bank PLC, and English banking company, Defendants.

Civ. A. No. 88–557.

United States District Court, W.D. Pennsylvania.

May 19, 1988.

---

Joseph A. Katarincic, David Borkovic, Kirkpatrick & Lockhart, Edward B. Wood, Koppers Co., Law Dept., Pittsburgh, Pa., for plaintiff Koppers Co., Inc.

William M. Wycoff, Ralph Scalera, Craig Frischmann, Thorp, Reed & Armstrong, Pittsburgh, Pa., Edwin B. Mishkin, Cleary, Gottlieb, Steen & Hamilton, New York City, for defendants BNS Partners, BNS Inc., Bright Aggregates, Inc., and Beazer PLC.

James D. Morton, Stanley Yorsz, Buchanan Ingersoll, P.C., Pittsburgh, Pa., Stephen Greiner, Willkie, Farr & Gallagher, New York City, for defendants American Exp. Co., Shearson Lehman Bros. Holdings, Inc., Shearson Lehman Hutton, Inc., and SL–Merger, Inc.

Theodore O. Struk, Dickie, McCamey & Chilcote, P.C., Pittsburgh, Pa., for defendant Nat. Westminster Bank PLC.

## MEMORANDUM ORDER

COHILL, Chief Judge.

Presently before us is Defendants' "Motion for Determination That Proposed Corrective Disclosure Will Satisfy and Discharge April 15, 1988 Order." This motion was submitted in response to this Court's Opinion and Order of April 15, 1988, granting plaintiff's motion for a preliminary injunction.

We find that an evidentiary hearing will be needed to address the substantive issues associated with the proper characterization of the Series B Preferred Stock under the margin regulations. In the interests of judicial economy, the evidentiary hearing will be limited to the margin regulation issues. As to other issues raised by plaintiff at the hearing on the preliminary injunction, which we stated were unlikely to succeed on the merits, there will be no evidentiary hearing unless the Court deems it necessary after the issues involving the margin regulations are resolved. Accordingly, pre-hearing discovery will be limited solely to the issues raised under the margin regulations.

As a preliminary matter, we address defendants' contention that plaintiff lacks standing to pursue further alleged violations of the margin regulations. This is a question of law, which needs no further factual development.

As we have stated in the past, there is no question that the plaintiff has standing under the Williams Act to challenge defendants' disclosures regarding the legality of the financial structure of the tender offer under the margin regulations. *Revlon, Inc. v. Pantry Pride, Inc.*, 621 F.Supp. 804, 814 (D.Del.1985). In order to evaluate plaintiff's challenge, we must necessarily evaluate the underlying substantive issues.

We initially found ourselves somewhat at a loss to evaluate the underlying substantive issue of whether the Series B Preferred Stock is a debt or equity security, in part because the margin regulations are silent as to the definition of "debt securities." We therefore requested guidance from the Board of Governors of the Federal Reserve System on April 22, 1988. In response to our inquiry, Michael Bradfield, General Counsel for the Board of Governors of the Federal Reserve System, has indicated by letter dated May 11, 1988 that this issue is one of fact, best addressed by the court. The complexity of the problem which we feel exists, is evidently shared by the Federal Reserve Board. Bradfield letter, at 8.

We will conduct an evidentiary hearing to address the margin regulation issues outlined by our Opinion of April 15, 1988, and elaborated in the Bradfield letter of May 11, 1988. The parties should present evidence to assist the court in resolving the following critical factual issues:

(1) the underlying and ultimate intention of the entities associated with the offeror with respect to the issuance *and redemption* of the Series B Preferred Stock;

(2) the ultimate source of Shearson Lehman Brothers Holdings, Inc.'s capital contribution, whether borrowed funds or accumulated equity; and

(3) the capital structure of SLBHI, and whether its asset structure is highly leveraged "like that of a bank."

In sum, the evidence should be designed to assist the court's determination of whether the Series B Preferred Stock is a "debt security" within the meaning of the margin regulations, nominally disguised as an equity security;

■ Finally, if the Series B Preferred Stock is found to be a debt security, we note that no amount of disclosure will cure the illegality of the offer. It simply is not enough for the offeror to state, however plainly, that his offer may be illegal, and to then merrily proceed to acquire the shares. If the financial structure of the tender offer is in violation of the margin regulations, then the offer is void *ab initio,* and no disclosure will remove this defect. *See* 15 U.S.C. § 78cc(b) (contracts in violation of rules or regulations under Securities Exchange Act are void).

Defendants have cited a line of cases in which courts have refused to entertain a so-called "private right of action" under the margin regulations. For example, in *Walck v. American Stock Exchange, Inc.,* 687 F.2d 778 (3d Cir.1982), *cert. denied,* 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983), *reh'g denied* 463 U.S. 1236, 104 S.Ct. 29, 77 L.Ed.2d 1451 (1983), an investor who was a customer of a securities brokerage firm which was a member of the American Stock Exchange brought an action against the American Stock Exchange seeking damages based on the Exchange's alleged failure to enforce the margin regulations. The Third Circuit Court of Appeals found that the statute did not authorize this cause of action. *See also e.g., Bennett v. United States Trust Company of New York,* 770 F.2d 308 (2d Cir.), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1985); *Bassler v. Central National Bank,* 715 F.2d 308 (7th Cir.1983); *Gilman v. FDIC,* 660 F.2d 688 (6th Cir. 1981).

We find this line of cases distinguishable on several grounds. First, while the courts have found that "customers," 15 U.S.C. § 78g(c), do not have a cause of action for damages, plaintiff here is not a "customer." Furthermore, plaintiff seeks injunctive relief rather than damages. *See*

*Rhoades v. Powell,* 644 F.Supp. 645, 661–65 (E.D.Cal.1986). Finally, this line of cases appears to have been decided under subsection (c) of section 78g, and we note that this action may more readily be characterized as an action under subsection (d). We note once again that once the tender offer is completed, there would be no adequate remedy available. This is a unique situation, and this issue is of significance, not only to the parties involved, but to the integrity of the securities markets.

The overriding purpose of the margin regulations is not to protect any individual, but rather to safeguard the integrity of the markets and the nation's financial health. *See, e.g., Bassler v. Central National Bank,* 715 F.2d 308, 310–31 (7th Cir.1983); *Walck v. American Stock Exchange, Inc.,* 687 F.2d 778, 789 (3d Cir.1982), *cert. denied,* 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed. 2d 1300, *reh'g denied* 463 U.S. 1236, 104 S.Ct. 29, 77 L.Ed.2d 1451 (1983). Congress intended the margin regulations to have a meaningful and beneficial effect. It is perfectly clear that, if the Series B Preferred Stock is a "debt security" within the meaning of the margin regulations, then the stock would be indirectly secured by "margin stock" in violation of Regulation G, 12 C.F.R. § 207. The Federal Reserve Board apparently does not have the authority or resources to conduct a hearing to determine the intent of the parties, which is the underlying factual issue. It is therefore necessary for the court to fulfill that fact-finding function here.

If the Series B Preferred Stock is found to be a debt security, the tender offer, as structured, must be permanently enjoined. Of course, in such instance defendants would be at liberty to arrange financing which would comply with the margin regulations.

On the other hand, if the court finds that the "stock" is truly stock, and not a debt security, this issue is removed from the case.

AND NOW, to-wit, this 19th day of May, 1988, for the reasons stated above, it is hereby ORDERED, ADJUDGED, and DE-CREED that the parties to the above-cap-

tioned action be and hereby are DIRECT-ED to appear before this court at 9:30 a.m. on May 31, 1988 for an evidentiary hearing on the above-described issues. It is further ORDERED that pre-hearing discovery shall be limited to the above-described issues.