**Adina COHEN, Plaintiff,**

v.

**CITIBANK, N.A., David Blech and D. Blech & Co., Inc., Defendants.**

**No. 95 Civ. 4826 (BSJ).**

United States District Court, S.D. New York.

Dec. 5, 1996.

Nathaniel B. Smith, Ranni & Smith, New York City, for plaintiff.

R. Paul Wickes, Ann M. Vermes, Shearman & Sterling, New York City, for defendant Citibank, N.A.

## MEMORANDUM & ORDER

JONES, District Judge.

In 1992, defendant Citibank, N.A. ("Citibank"), a banking institution, extended an advance of $1,120,000 to plaintiff Adina Cohen ("Cohen"). Two years later, Citibank notified Cohen that the amounts outstanding

on the advance were due and payable. At least a portion of the loan still remains outstanding.

Cohen now asserts seventeen causes of action, essentially alleging that Citibank acted in concert with defendants David Blech ("Blech") and D. Blech & Company, Incorporated ("DBC") to grant her the advance in violation of various federal and state laws, thereby rendering any obligation based on the advance void and unenforceable. Pending is Citibank's motion to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6).

## BACKGROUND [1]

Cohen and Blech met in the early 1980s. (Am.Compl. ¶ 24.) Over time, Blech became Cohen's investment advisor and broker and asserted control over the day-to-day handling of her financial affairs. (*Id.* ¶ 26.)

On or about February 9, 1990, Blech opened DBC as a registered broker-dealer under the Securities Exchange Act of 1934 (the "1934 Act"). (*Id.* ¶ 10.) DBC specialized in the promotion, placement, sale, and marketing of "bio-technology" securities (the "Blech Securities"). (*Id.* ¶ 13.) At all times relevant to this motion, Blech was DBC's sole shareholder, director, and controlling person. (*Id.* ¶ 11.) In addition, Blech was the beneficial owner of a large portion of the Blech Securities. (*Id.* ¶ 14.) However, it was Citibank that financed the securities operations of both Blech and DBC, maintaining and operating various accounts on behalf of Blech, DBC, and others. (*Id.* ¶ 15–18.)

In or about December 1992, Cohen obtained a line of credit from Citibank for $1,120,000 (the "1992 Advance"). (*Id.* ¶¶ 36–37.) Cohen signed a Demand Note and other documents reflecting the loan (*id.* ¶ 38), but Blech guaranteed the loan. (*Id.* ¶ 39.)

Over the course of the next two years, Citibank maintained in Cohen's name a collateral account, a loan account, a regular checking account, and money market accounts. (*Id.* ¶ 43.) From December 1992 through September 1994, Blech, DBC and Citibank transferred money into and out of Cohen's collateral account and various other accounts maintained by Citibank. (*Id.* ¶¶ 47, 17–19.) With a few exceptions, Cohen, herself, never authorized these transfers. (*Id.* ¶ 48.) In fact, Cohen alleges that the transfers were effected in order to further a parking and manipulation scheme between Citibank, Blech, and others to manipulate the market and bolster the value of the Blech Securities. (*Id.* ¶¶ 51–53.) In this connection, Cohen maintains that the 1992 Advance was a "sham" constituting an unlawful extension of credit with the sole purpose of allowing Blech to acquire biotechnology securities. (*Id.* ¶¶ 39–40, 77.) Accordingly, she states that Blech is the true obligor on the loan. (*Id.*).

In the spring of 1994, the market value of the Blech Securities fell; causing Blech, DBC, and Citibank to experience financial problems. (*Id.* ¶¶ 52 & 59.) Around that time, Citibank "looked to" Blech and DBC to provide it with additional securities in connection with and to pay interest on the 1992 Advance. (*Id.* ¶¶ 59–60.)

In September 1994, with the prices of the Blech Securities falling, DBC began to collapse. (*Id.* ¶ 63.) On September 22, 1994, Citibank declared the 1992 Advance due and informed Cohen of its intent to sell the collateral in her collateral account. (*Id.* ¶ 67.) On April 12, 1995, Citibank sent a letter to Cohen reminding her of her obligations under the terms of the 1992 Advance and notifying her of its intent to seek legal redress if necessary. (*Id.* ¶¶ 73–74.)

On June 27, 1995, Cohen filed (but did not serve) this federal action against Citibank, alleging that the 1992 Advance was illegally effectuated and seeking declaratory relief to that effect. On October 3, 1995, Citibank filed and served a motion for summary judgment in lieu of complaint in the Supreme Court for the State of New York, seeking a judgment in the amounts then due under the 1992 Advance. That day, Cohen served Citibank with the complaint in this action. The

---

1. As this is a motion to dismiss, this section is culled from the Complaint, which we assume to be true. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972).

state court action is fully briefed and awaiting decision.

On November 13, 1995, Cohen filed an Amended Complaint in this case, adding Blech and DBC as defendants and asserting seventeen causes of action seeking declaratory and monetary relief against the defendants. Of those seventeen claims, thirteen are levied against Citibank, six of which assert federal causes of action under the 1934 Act.

## DISCUSSION

### I. PARALLEL ACTIONS

Since there is a parallel action pending in state court, the threshold issue is whether this court should stay these proceedings until the state court action is resolved. *See Colorado River Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In this connection, Citibank argues that the court should dismiss the complaint under the principles expressed by the Supreme Court in both *Colorado River,* 424 U.S. 800, 96 S.Ct. 1236, and *Wilton v. Seven Falls Co.,* —— U.S. ——, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Cohen disagrees. For the following reasons, we decline to abstain at this time.

### A. The *Colorado River* Abstention Doctrine

The Supreme Court in *Colorado River* held that district courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred on them by Congress. *Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244; *accord Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Indeed, only "the clearest of justifications" constituting "exceptional circumstances" may temper this obligation. *Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244.

The Supreme Court has identified six non-exhaustive factors a district court should carefully balance in determining whether such "exceptional circumstances" exist. They are: (1) assumption by federal or state court of jurisdiction over any *res* or property; (2) whether the federal forum is any less convenient to the parties than the state fo-

rum; (3) whether there is a danger of piecemeal litigation; (4) the order of the two suits; (5) whether federal law provides the rule of decision on the merits; and (6) whether the state court is inadequate to protect the "plaintiff's rights." *Moses Cone* 460 U.S. 1, 14, 103 S.Ct. 927, 936; *Bernstein v. Hosiery Mfg. Corp. of Morganton, Inc.,* 850 F.Supp. 176, 182 (E.D.N.Y.1994); *see also Will v. Calvert Fire Ins. Co.* 437 U.S. 655, 664, 98 S.Ct. 2552, 2558, 57 L.Ed.2d 504 (1978) ("... the decision whether to defer to the concurrent jurisdiction of a state court is ... a matter committed to the district court's discretion.")

Applying the principles of *Colorado River,* this Court finds that abstention is inappropriate here. First, despite Citibank's protestations to the contrary, this action began before the state proceeding. *See* Fed. R.Civ.P. 3 ("A civil action is commenced by *filing a complaint* with the court.") (emphasis supplied). Second, this case involves numerous allegations that defendant Citibank violated the federal securities laws. While the Court recognizes that state courts may properly consider federal claims raised as defenses to state actions, even where federal courts have exclusive jurisdiction, *Hathorn v. Lovorn,* 457 U.S. 255, 266 & n. 18, 102 S.Ct. 2421, 2428–29 & n. 18, 72 L.Ed.2d 824 (1982); *Andrea Theatres, Inc. v. Theatre Confections, Inc.,* 787 F.2d 59, 61 (2d Cir.1986); *Banque Indosuez v. Pandeff,* 193 A.D.2d 265, 603 N.Y.S.2d 300, 302 (1st Dep't 1993), *lv. to appeal dismissed,* 83 N.Y.2d 907, 614 N.Y.S.2d 388, 637 N.E.2d 279 (1994), it also notes that state courts may not grant affirmative relief based on claims for which federal jurisdiction is exclusive, *Andrea Theatres, Inc.,* 787 F.2d at 61; *see also Canaday v. Koch,* 608 F.Supp. 1460, 1474 n. 24 (S.D.N.Y.) (even if case for abstention is very strong, "in certain suits" if jurisdiction over some claims is exclusively federal, court should sever the federal claims and decide them), *aff'd,* 768 F.2d 501 (1985). In this connection, if a state court rejects a federal defense, it is unsettled whether Cohen would be precluded from asserting the claim as the basis for affirmative relief in a federal suit. *Id.* (citing *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84

L.Ed.2d 274 (1985)). As a result, the Court finds that the state proceedings are an inadequate forum to protect the plaintiff's rights to seek affirmative relief pursuant to her federal causes of action. *See Will v. Calvert Ins. Co.*, 437 U.S. 655, 670, 98 S.Ct. 2552, 2561, 57 L.Ed.2d 504 (1978) (Brennan, J., dissenting) (state court decisions should not have preclusive effect over matters within exclusive federal court jurisdiction); Note, The Collateral Estoppel Effect of Prior State Court Findings in Cases Within Exclusive Federal Jurisdiction, 91 Harv.L.Rev. 1281 (1978). Accordingly, in an effort to avoid future litigation over collateral issues and because the balance of factors tips in favor of refraining from abstention, the Court finds that the *Colorado River* doctrine does not counsel abstention in this case.

**B. Abstention Under *Wilton***

■ Citibank urges that even if this court refrains from abstention under the *Colorado River* doctrine, it should abstain under the standard articulated by the Supreme Court in *Wilton v. Seven Falls Co.*, —— U.S. ——, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). In *Wilton*, the court held that where a party seeks a declaratory judgment and a parallel state suit is pending, the issue of abstention is governed by the standard set forth in *Brillhart v. Excess Inc. Co. of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), rather than the *Colorado River* doctrine. —— U.S. at ——, 115 S.Ct. at 2144. *Brillhart*, in turn, held that in deciding whether to dismiss a declaratory judgment action, where a parallel state proceeding exists the court should consider whether the issues in the federal suit could be better settled in the pending state suit. *See* 316 U.S. at 495, 62 S.Ct. at 1175–76. *Woodstock Resort Corp. v. Scottsdale Ins. Co.*, 921 F.Supp. 1202, 1204 (D.Vt.1995).

Four of the federal claims at issue here seek declaratory relief, while two seek both declaratory relief and damages. Cohen argues that since some of the claims seek damages, *Wilton* does not apply. Citibank disagrees. Neither party cites any case law discussing *Wilton's* application where both declaratory relief and damages are sought.

This court need not decide the issue, however. Even assuming *Wilton* applies, the court finds that the issues raised can be better settled here in federal court. Specifically, the Court finds that the decision here, given its nature, will not interfere with the state proceeding and that the issues concerning the plaintiff's claims for relief (as opposed to her defenses in the state court action) can be best dealt with in this forum. Accordingly, this Court refuses to abstain or dismiss this suit under *Wilton*.

**II. LEGAL STANDARD**

A motion to dismiss the complaint will not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir.1985). *Accord H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989); *Gagliardi v. Village of Pawling*, 18 F.3d 188, 191 (2d Cir.1994). In determining the sufficiency of a pleading on a motion to dismiss, the court must treat all factual allegations in the complaint as true, *see LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991), and draw all reasonable inferences in plaintiff's favor, *see Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989). "The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980)).

Using this standard, the Court turns to the legal sufficiency of plaintiff's claims.

**III. PLAINTIFF'S FEDERAL CLAIMS AGAINST CITIBANK**

Simply put, plaintiff's various federal claims against Citibank allege that the acts surrounding the 1992 Advance were committed in violation of both the Securities and Exchange Act of 1934 and the Glass–Steagall Act, and that therefore the terms of the advance are unenforceable.

**A. Claim 1: Section 29(b) of the 1934 Act**

■ In her first claim for relief, plaintiff claims that the 1992 Advance (1) constituted an unlawful extension of credit in violation of Regulations U, 12 C.F.R. § 221 *et seq.*, and T, 12 C.F.R. § 220 & 224, which were promulgated under the 1934 Act's Section 7, 15 U.S.C. § 78g (imposing margin requirements). Additionally, plaintiff alleges that the advance "exceeded the maximum loan value of a loan used to acquire margin stocks and was secured, directly or indirectly, by margin stock." (Compl. ¶ 79.) As a result, plaintiff claims, the terms of the 1992 Advance are unenforceable and void pursuant to Section 29(b) of the 1934 Act, 15 U.S.C. § 78cc(b), which provides in relevant part that "every contract made in violation of any provision of [the 1934 Act] or of any rule or regulation thereunder . . . shall be void. . . ."

The Supreme Court in *Mills v. Electric Auto–Lite Company et al.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), found that Section 29(b) renders contracts in violation of the 1934 Act "voidable *at the option of the innocent party.*" 396 U.S. at 385, 90 S.Ct. at 622. Nine years later, in *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 246–47, 62 L.Ed.2d 146 (1979), the Supreme Court reenforced this position, stating that *Mills* recognizes the "right to rescind" a contract made void under the criteria of Section 29(b).[2] *See also Royal Air Properties, Inc. v. Smith,* 312 F.2d 210, 213 (9th Cir.1962) (finding that certain parties can void a contract under section 29(b) by "bring[ing] a suit to rescind."); *Pompano–Windy City Partners, Ltd. v. Bear Stearns & Co., Inc.,* 794 F.Supp. 1265, 1288 (S.D.N.Y.1992) (discussing right to void a contract under Section 29(b)); *Slomiak v. Bear Stearns & Co.* 597 F.Supp. 676, 681–82 (S.D.N.Y.1984) (Section 29(b) allows some plaintiffs to render illegal contracts void).[3]

■ However, in order to establish a violation under Section 29(b), a plaintiff must "show that (1) the contract involved a prohibited transaction, (2) he is in contractual privity with the defendant, and (3) he is in the class of persons the [1934] Act was designed to protect." *Pompano–Windy City Partners, Ltd.,* 794 F.Supp. at 1288 (quoting *Regional Properties, Inc. v. Financial and Real Estate Consulting Co.,* 678 F.2d 552, 559 (5th Cir.1982)); *accord Pearlstein v. Scudder & German,* 429 F.2d 1136, 1149 (2d Cir.1970) (Friendly, J., dissenting), *cert. denied,* 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971; *In re Gas Reclamation, Inc. Securities Litigation,* 733 F.Supp. 713, 719 (S.D.N.Y.1990).

---

**2.** *But see Bassler v. Central National Bank,* 715 F.2d 308, 311–313 (7th Cir.1983) (finding that *TAMA* failed to make explicit its holding and concluding that section 29(b) did not confer a private right of action upon investment borrowers as against investment lenders).

**3.** Citibank maintains that *Bennett v. United States Trust, Co.,* 770 F.2d 308 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986), forecloses Cohen's attempt to assert a Section 29(b) action because of an alleged Section 7 violation. In *Bennett,* the plaintiff sought money damages for, among other things, a violation of Section 7. 770 F.2d at 310. Agreeing with all the circuits that had considered the issue at the time, *Bennett* held in no uncertain terms that "no private right of action exists under Section 7." *Id.*

Yet, *Bennett* does not control this case. First, the plaintiffs in *Bennett* asserted a private cause of action under Section 7, not under Section 29(b) as is alleged here. Second, they sought monetary relief, not equitable relief like Cohen

seeks. Lastly, Citibank's reading of the case would directly contradict the clear direction of *Mills* and *TAMA,* which counsel that a private litigant can sue under Section 29(b) to void a contract, *i.e.* obtain equitable relief. Accordingly, this Court finds that Section 7 may serve as the predicate for a private cause of action seeking equitable relief pursuant to Section 29(b). *See Koppers Co., Inc. v. American Express Co.,* 689 F.Supp. 1417 (W.D.Pa.1988) (finding private cause of action seeking equitable relief under section 29(b) based on violation of the 1934 Act's margin regulations); *Rhoades v. Powell,* 644 F.Supp. 645, 664 (E.D.Cal.1986), *aff'd,* 961 F.2d 217 (9th Cir.1992) (finding that section 29(b) creates private right of action to void contract made in violation of the 1934 Act's section 15). *But see Bassler v. Central National Bank,* 715 F.2d 308, 310–13 (7th Cir.1983) (affirming dismissal of suit brought by borrower against lender seeking judgment voiding loans under section 29(b) based on Regulation U violation, and holding that Congress did not intend "to confer a right of action upon investment borrowers as against investment lenders.")

■ The plaintiff here cannot meet the first or third requirements of this test. With regard to the first prong, plaintiff alleges only that the monies lent in the 1992 Advance were used in violation of Section 7. She does not allege that the contract evidencing the loan was illegal. *See Slomiak,* 597 F.Supp. at 681–82 (discussing distinction between unlawful contracts and unlawful transactions in section 29(b) context). Additionally, plaintiff, an individual borrower, is not in the class of persons the 1934 Act was designed to protect and thus fails to meet the third prong necessary to assert her Section 29(b) claim. *See Bassler,* 715 F.2d at 310–11 (finding that the overriding purpose of margin regulations is not to protect any individual, but to safeguard the integrity of the markets and the nation's financial health) (holding that Congress did not intend "to confer a right of action upon investment borrowers as against investment lenders."); *Bennett,* 770 F.2d at 312 ("Section 7 was clearly not passed for the especial benefit of individual investors.") Accordingly, plaintiff's first claim is dismissed.

B. Claim II: Glass–Steagall Act

■ Count II of the Amended Complaint asserts that Citibank acted as the source of financing for the sale and distribution of the Blech Securities and therefore violated sections 16 and 21 of the Glass–Steagall Act, 12 U.S.C. §§ 24 & 378, which impose strict limitations on the authority of a bank to purchase, sell, issue, underwrite, distribute, or otherwise deal in stocks and securities. Plaintiff maintains that these violations allow her to void the agreement evidencing the 1992 Advance and render it unenforceable. Citibank argues that Cohen may not maintain a private cause of action under the Glass–Steagall Act.

There is no express statutory authorization for a private action to redress a violation of the Glass–Steagall Act. Additionally, neither the Supreme Court nor the Second Circuit has spoken on whether a private right of action for injunctive relief may lie under the act. Nevertheless, plaintiff argues that the District of Columbia Circuit recognized such an action in *New York Stock Exchange v. Bloom,* 562 F.2d 736 (D.C.Cir.1977), *cert. denied,* 435 U.S. 942, 98 S.Ct. 1520, 55 L.Ed.2d 538 (1978). Dismissing a Glass–Steagall claim on ripeness grounds, the *Bloom* court stated in *dictum* that "an implied right of action for injunctive relief would exist *for appropriate parties." Id.* at 742 (emphasis supplied).

Regardless of whether the claimed right of action exists,[4] plaintiff is without standing to bring such an action. As *Bloom* and *Russell v. Continental Ill. Nat'l Bank & Trust Co. of Chicago,* 479 F.2d 131 (7th Cir.), *cert. denied,* 414 U.S. 1040, 94 S.Ct. 541, 38 L.Ed.2d 331 (1973), both found, a plaintiff would have standing to sue under Glass–Steagall only if she is part of the class intended to be protected by the act. *Bloom,* 562 F.2d at 742 n. 5; *Russell,* 479 F.2d at 133. In this connection, the *Bloom* court specifically states that companies competing with each other under the regulation of Glass–Steagall constitute such a class. 479 F.2d at 134 n. 10. *Russell* expands on this notion and states that case law supports the existence of a private right of action for "bank depositors whose deposits were placed at risk ... and in competing companies operating other mutual funds." 479 F.2d at 133.[5] Cohen, however, is none of

---

4. Again, whether such a private right of action exists would be answered by the test set forth in *Cort v. Ash,* 422 U.S. at 78, 95 S.Ct. at 2087–88.

5. The Supreme Court in *Investment Company Institute v. Camp,* 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971), stated that in passing the Glass–Steagall Act, Congress was "concerned that bank depositors might suffer losses on investments that they purchased in reliance on the relationship between the bank and its affiliate.... There was also perceived the danger that when commercial banks were subject to the promotional demands of investment banking, they might be tempted to make loans to customers with the expectation that the loan would facilitate the purchase of stocks and securities." 401 U.S. at 631–32, 91 S.Ct. at 1099. However, as *Russell* makes clear, *Camp* only stands for the proposition that companies engaged in the business of operating mutual funds, and perhaps a bank's depositors or stockholders, have standing to bring certain actions under the act. 479 F.2d at 133–134. Investors in mutual funds and borrowers from a bank represent different interests from such entities. *See id.* Indeed, it is hard to imagine how either kind of party could be injured from a bank's entry into the kind of activity

these; she is a borrower of funds from a bank. Accordingly, there is no authority for her to bring a private action pursuant to the Glass–Steagall Act and the claim is thus dismissed.

## C. Claim III: Section 11

▪ Plaintiff's third claim for relief alleges that defendants extended, maintained, and arranged for the extension of credit for securities that were part of a new issue in which they participated as members of a selling group within thirty days prior to such transactions. Such actions, plaintiff states, violated the Securities Exchange Act's section 11(d), 15 U.S.C. § 78k(d), which prohibits broker-dealers from extending credit in certain circumstances. In defense, Citibank once again argues that no private right of action exists for plaintiff to maintain this action. This Court agrees with Citibank.

Section 11(d) does not expressly provide for a private right of action. However, in certain situations courts have found implied remedies in favor of private parties within the class of persons intended to be protected by the statute. *See Russell,* 479 F.2d at 133 (providing examples). The inquiry is governed by the test set forth in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975), which directs courts to ask: first, is the plaintiff "one of the class for whose especial benefit the statute was enacted," that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent to create or deny a remedy? Third, would implication of a private remedy be consistent with the underlying purpose of the statute? And lastly, is the cause of action one traditionally relegated to state law, in an area

basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law? 422 U.S. at 78, 95 S.Ct. at 2087–88. The Supreme Court has stated that the second factor, legislative intent, is entitled to the greatest weight in the calculus. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979). Indeed, a lack of evidence of legislative intent to create a private right of action can signify that a private right of action should not be implied. *Id.* at 571–76, 99 S.Ct. at 2486–89 ("Implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best.").

Applying these principles, I adopt the analysis outlined in *Sennett v. Oppenheimer & Co., Inc.,* 502 F.Supp. 939 (N.D.Ill.1980), and find that the balance of factors counsels against implying a private right of action under Section 11. First, the legislative history of the provision is completely devoid of Congress' intent to provide a private remedy under the section. Second, the regulatory framework of the securities laws makes it unnecessary to imply the right of action urged. Indeed, an investor in securities is not damaged by an act in contravention of Section 11 unless the security decreases in value, which would result regardless of the violation. Lastly, implying the right of action urged by plaintiff would be, at least in part, redundant, as Congress has already provided for a private right of action for wilful violations of Section 11 in Section 32, 15 U.S.C. § 78ff, of the 1934 Act.[6]

## D. Claim V: Section 9(a)

▪ Plaintiff's fifth cause of action asserts that for the purpose of creating a false or

---

that the Glass–Steagall Act prohibits. *See id.* (stating that fund participants should *benefit* from a rule that would permit banks to engage in acts proscribed by Glass–Steagall).

**6.** Plaintiff relies on *Hawkins v. Merrill, Lynch, Pierce, Fenner & Beane,* 85 F.Supp. 104 (W.D.Ark.1949), for the proposition that an implied right of action under section 11 exists. In *Hawkins,* decided forty-seven years ago, the Western District of Arkansas held that "it seems clear that a violation by one of the provisions of the Securities and Exchange Act of 1934 ... or the regulations promulgated thereunder, will

give rise to a civil suit for damages on the part of one injured by that violation." 85 F.Supp. at 121. Apparently, *Hawkins* is the only case in the 1934 Act's sixty-two year history to so hold. Since then, not only has the Supreme Court decided *Cort v. Ash, supra,* but also it has held in direct contradiction to *Hawkins* that there is no private right of action under section 17(a) of the 1934 Act, *see Touche Ross & Co. v. Redington,* 442 U.S. 560, 567, 99 S.Ct. 2479, 2484–85, 61 L.Ed.2d 82 (1979). I thus refuse to follow the path urged by plaintiff and abandoned long ago by the federal courts.

misleading appearance to the marketing and trading of the Blech Securities, Blech and DBC effected transactions in registered Blech securities in violation of the 1934 Act's Section 9(a), 15 U.S.C. 78i(a), which prohibits certain transactions meant to manipulate securities' prices. For these reasons, Cohen states, Citibank may not enforce any obligation against her in connection with the 1992 Advance. Citibank, however, again demonstrates that plaintiff may not assert the private right of action claimed.

Unlike Section 11, Section 9 provides for a private right of action in certain circumstances. 15 U.S.C. 78i(e). Such circumstances, however, are not present here. Rather, a private right of action under Section 9 accrues *only* to purchasers or sellers of securities at prices affected by acts or transactions in violation of section 9. *Id.; see Liberty National Ins. Holding Co. v. Charter Co., et al.,* 82 Civ. 233S, 1982 WL 1329 (N.D.Ala.1982) ("the court is firm in its opinion that Congress neither expressly nor impliedly intended to create a private right of action under Section 9 for damages or injunctive relief other than that expressly created in Section 9(e) for the especial benefit of a purchaser or seller"). Plaintiff, however, does not allege that she, herself, is a buyer or seller of securities affected by acts committed in violation of Section 9. Accordingly, I find that she is without standing to assert a cause of action under Section 9.

**E. Claims VI and VII: Sections 20(a) and (b) of the 1934 Act**

 In her sixth and seventh causes of action, plaintiff alleges that Citibank is liable as a control person under Sections 20(a) and (b) of the 1934 Act, 15 U.S.C. §§ 78t(a) and (b). Specifically, plaintiff claims that Citibank directly and indirectly controlled Blech and DBC, both actually engaging in, and in bad faith inducing Blech and DBC to engage in, the alleged unlawful acts that are the gravamen of her complaint. Citibank disagrees.

Section 20(a) states:

Every person who, directly or indirectly, controls any person liable under any provision of [the 1934 Act] ... shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). Thus, the section provides for liability of persons who "control" those who violate the 1934 Act. *See Marbury Management, Inc. v. Kohn,* 629 F.2d 705, 716 (2d Cir.) (suggesting that *scienter* is not an element of a Section 20(a) violation), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980); *Morse v. Weingarten,* 777 F.Supp. 312, 318 (S.D.N.Y.1991) (requiring *scienter*). In order to plead a Section 20(a) claim, a plaintiff must allege at least "control status." *Food & Allied Serv. Trades v. Millfeld Trading,* 841 F.Supp. 1386, 1390–91 (S.D.N.Y.1994). The Securities and Exchange Commission has defined the term as "the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a [violator], whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 240.12b–2. In this connection, a bare allegation that a person is a corporate officer, director, or shareholder is insufficient to allege "control." *See In re Par Pharmaceutical, Inc. Securities Litigation,* 733 F.Supp. 668, 679 (S.D.N.Y.1990); *Hemming v. Alfin Fragrances, Inc.,* 690 F.Supp. 239, 245 (S.D.N.Y.1988). Rather, the allegations must support a reasonable inference that the alleged violator had the potential power to influence and direct the activities of the primary violator. *Food & Allied Serv. Trades,* 841 F.Supp. at 1391.

Absent conclusory statements, there is no allegation here supporting an inference that Citibank controlled or had the power to control Blech and DBC. Rather, plaintiff merely alleges that the 1992 Advance was used to finance the purchase of Blech Securities, suggesting that Citibank acted in concert with Blech and DBC in violating the 1934 Act. Thus, the complaint fails to plead sufficient facts to make out a Section 20(a) claim.

 Plaintiff similarly fails to plead adequately a Section 20(b) violation. That section provides:

It shall be unlawful for any person, directly or indirectly, to do any act or thing

which it would be unlawful for such person to do under the provisions of this title or any rule or regulation thereunder through or by means of any other person. 15 U.S.C. § 78t(b). Few reported cases discuss the applicability of Section 20(b), but it is clear that the section requires a showing that a "controlling person knowingly used the controlled person to commit the illegal act." *Moss v. Morgan Stanley,* 553 F.Supp. 1347, 1362 (S.D.N.Y.), *aff'd,* 719 F.2d 5 (1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). "Under section 20(b) there must be shown to have been knowing use of a controlled person by a controlling person before a controlling person comes within its ambit." *Securities Exchange Commission v. Coffey,* 493 F.2d 1304, 1317 (6th Cir.1974), *cert. denied,* 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975). Again, however, plaintiff fails to plead the requisite "control." In addition, plaintiff fails to plead "knowing use." Accordingly, the complaint fails to plead facts sufficient to make out a Section 20(b) claim.

## IV. REMAINING CLAIMS

Cohen also asserts two federal causes of action against Blech and DBC alone, as well as a bevy of state claims against all defendants. Given the changed posture of this case, all parties are directed to brief whether under *Colorado River, Wilton,* or any other doctrine this Court should continue to assert jurisdiction over the remaining claims. Additionally, plaintiff should specifically provide authority for the federal claims asserted against Blech and DBC alone, and, since Blech and DBC have yet to appear, discuss the possibility, if any, of issuing a default judgment against them. Briefs shall be due within 10 days of the date of this Memorandum and Order and may not exceed 15 pages each.

## CONCLUSION

For the foregoing reasons, Citibank's motion to dismiss plaintiff's federal causes of action against it is granted.

**So ordered.**